STATE of Wisconsin, Plaintiff-Respondent,†

v.

DEBORAH J.Z., Defendant-Appellant.

Court of Appeals

*No. 96–2797–CR. Submitted on briefs May 11, 1999.—Decided May 26, 1999.*

(Also reported in 596 N.W.2d 490.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Sally A. Hoelzel*, assistant state public defender, of Racine and *Priscilla*

*Smith* and *Bonnie Scott Jones,* Center for Reproductive Law and Policy of New York.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Robert S. Flancher*, district attorney, and *Joan M. Korb*, assistant district attorney of Racine.

In support of defendant-appellant, an amici curiae brief was filed by *Peter M. Koneazny*, American Civil Liberties Union of Wisconsin Foundation, Inc. and *Charles H. Barr*, Volunteer Attorney of *Croen & Barr* of Milwaukee.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

ANDERSON, J. Deborah J.Z. appeals from an order denying her motion to dismiss the information the State filed against her for attempted first-degree intentional homicide and first-degree reckless injury contrary to §§ 939.32, 940.01 and 940.23(1), STATS. Deborah argues that the State did not establish at the preliminary hearing that it had probable cause to charge her with these crimes. She contends that her alleged act of consuming alcohol while pregnant does not satisfy the statutes' requirement that the act be perpetrated against another "human being." We are persuaded that the term "human being" as used in §§ 940.01 and 940.23(1) was not intended to refer to an unborn child and that Deborah's prenatal conduct does not constitute attempted first-degree intentional homicide and first-degree reckless injury. Therefore, we reverse.

## FACTS

One week before her due date, Deborah was drinking in a local tavern when she believed she was going to

470

have her baby. Deborah's mother came and took her to St. Luke's Hospital for medical treatment. At the hospital, Deborah was uncooperative, belligerent at times and very intoxicated. Her blood alcohol concentration exceeded 0.30%. Deborah allegedly told a nurse that "if you don't keep me here, I'm just going to go home and keep drinking and drink myself to death and I'm going to kill this thing because I don't want it anyways." Deborah also expressed fear about the baby's race, an abusive relationship she was in and the pain of giving birth.

After consulting with her physician, Deborah consented to a cesarean section and gave birth to a baby girl, M.M.Z. At birth, M.M.Z. was extremely small, she had no significant subcutaneous fat and her physical features—mild dysmorphic abnormalities—presented fetal alcohol effects. M.M.Z.'s blood alcohol level was 0.199% at birth. After a few weeks, M.M.Z. was gaining weight, had no significant jaundice and was able to tolerate temperature outside the incubator. Consequently, she was discharged to a foster family.

On June 10, 1996, the State filed a criminal complaint against Deborah charging her with attempted first-degree intentional homicide and first-degree reckless injury. *See* §§ 939.32, 940.01, 940.23(1), STATS. After a preliminary hearing, the circuit court found probable cause to charge Deborah and bound her over for trial. The State filed a two-count information to which Deborah pled not guilty. Deborah brought a motion to dismiss which was denied. We accepted Deborah's petition to review the nonfinal order denying her motion to dismiss the information for lack of probable cause at the preliminary examination.[1]

---

[1] Because this is an issue of first impression in this state, we certified this appeal to the supreme court. *See* RULE 809.61,

## DISCUSSION

Deborah argues that the State's allegations against her do not constitute a criminal offense. She objects to the circuit court's decision to bind her over for trial because she contends that the State failed to establish probable cause at the preliminary hearing that she committed the charged crimes. *See* § 970.03(1), STATS. In other words, Deborah asserts that it is not reasonable or plausible that she committed either crime. *See State v. Dunn,* 121 Wis. 2d 389, 398, 359 N.W.2d 151, 155 (1984). Her primary contention is that the plain language of the statutes under which she was charged does not apply to the conduct in question because both statutes require that the conduct must be directed toward a "human being." She adds that the statutes define "human being" as "one who has been born alive," so her unborn child is not covered by either statute. *See* § 939.22(16), STATS.

The question presented by this appeal—whether an unborn child is a "human being" within the statutes for attempted first-degree homicide and first-degree reckless injury—is an issue of statutory construction. Statutory construction is a question of law that we review de novo. *See State v. C.A.J.,* 148 Wis. 2d 137, 139, 434 N.W.2d 800, 800 (Ct. App. 1988). The purpose of statutory interpretation is to discern the intent of

STATS. The supreme court accepted the certification of this appeal. *See State v. Deborah J.Z.,* 219 Wis. 2d 926, 584 N.W.2d 125 (1998). After considering the issue presented in this appeal, the supreme court was equally divided on the outcome and, therefore, vacated its decision to accept certification and remanded the appeal to this court. *See State v. Deborah J.Z.,* 225 Wis. 2d 33, 590 N.W.2d 711 (1999). Accordingly, we now address the merits of this appeal.

the legislature, and, in doing so, our primary source will be the language of the statute itself. *See State v. Eichman*, 155 Wis. 2d 552, 560, 456 N.W.2d 143, 146 (1990). We begin by reading the statute's language, and, if the language is unambiguous, we apply it to the facts at hand. *See State v. Williams*, 198 Wis. 2d 516, 525, 544 N.W.2d 406, 410 (1996). When we are presented with a penal statute, the general rule is that such a statute should be strictly construed in favor of the accused. *See State v. Wilson*, 77 Wis. 2d 15, 28, 252 N.W.2d 64, 70 (1977).

This appeal concerns the following statutes. First-degree intentional homicide is defined in § 940.01(1)(a), STATS., as "caus[ing] the death of another human being with intent to kill that person." And § 940.23(1)(a), STATS., provides that "[w]hoever recklessly causes great bodily harm to another human being under circumstances which show utter disregard for human life" commits first-degree reckless injury. These sections both require that actions be taken against a "human being." "Human being" is defined in § 939.22(16), STATS., as "one who has been born alive."[2]

[2] We note that the complete definition of "human being" found in § 939.22(16), STATS., also states that the definition should be applied "when used in the homicide sections." This appeal asks us to apply this definition to a homicide section, § 940.01, STATS., and a reckless injury section, § 940.23, STATS. There is not a separate definition for "human being" in the reckless injury context. However, both sections are found in ch. 940, STATS.—titled, "Crimes Against Life and Bodily Security." We address this controversy by considering the statutory scheme as a whole and harmonizing the sections within it in a consistent manner. *See State v. Williams*, 198 Wis. 2d 516, 527, 544 N.W.2d 406, 411 (1996). Using such a method, the "human being" definition is applicable to all the sections found in ch. 940. Furthermore, § 939.22 directs us to apply its definitions

473

Therefore, the issue we need to address is whether M.M.Z., when an unborn child, is a "human being" according to § 939.22(16).

Deborah's principal argument is that the legislature did not intend to include the actions of a pregnant woman vis á vis her unborn child under either statute because they apply only to one who causes death or injury to another human being who has been born alive. Any intent or indifference that she may have manifested by her continued dependence on, and abuse of, alcohol during her pregnancy was directed toward her own body and the unborn child she carried within her, not toward another human being.

Conversely, the State's position[3] is that the plain language of the homicide and reckless injury statutes makes them applicable to Deborah. Under the State's interpretation, the definition of a human being does not specifically exclude an unborn child when the alleged perpetrator is the mother. As support, it argues that while *Roe v. Wade*, 410 U.S. 113, 158 (1973), states that an unborn child is not considered a human being, "there is still great wisdom, logic and common sense in the pre-*Roe* cases regarding the legal rights of fetuses." However, we need not delve into this strained argument, which asks us to resurrect the reasoning in cases overruled by the United States Supreme Court, because we agree with both parties that the plain language of both statutes ultimately determines the issue.

We pause briefly to note that our analysis of this case is not about the propriety or morality of Deborah's

"[i]n chs. 939 to 948 and 951"; this obviously includes ch. 940. As a result, we apply the definition of "human being" in § 939.22(16) to both the homicide and reckless injury sections.

[3] The state attorney general's office declined the opportunity to submit briefing on this case.

conduct while pregnant. Nor is it about her constitutional right to reproductive choice guaranteed in *Roe*. On the contrary, this appeal is one of statutory construction. Both parties assert that the statutes in question are unambiguous and clearly set forth the legislature's intent. We agree and, accordingly, proceed with considering the plain language of the statutes.

We determine that according to the plain language of the first-degree intentional homicide and first-degree reckless injury statutes, the legislature did not intend for these statutes to apply to actions directed against an unborn child. The legislature clearly intended to exclude an unborn child when it limited the definition of a "human being" to include only "one who has been born alive." *See* § 939.22(16), STATS.

For example, in ninety-one different sections of the Wisconsin Statutes the legislature has specifically included the words "unborn child." *See, e.g.*, chs. 48, 940, and § 940.195, STATS. This illustrates that the legislature is in the practice of considering and protecting the rights of unborn children in this state. Particularly noteworthy is the fact that other subsections within the very sections with which Deborah is charged contain protections for an unborn child. *See* §§ 940.01(1)(b), 940.23(1)(b), STATS.[4] If a statute contains a given provision, "the omission of such provision from a similar

---

[4] The legislature recently created § 939.75, STATS. *See* 1997 Wis. Act 295, § 12. This section deals with "[d]eath or harm to an unborn child" and refers to both §§ 940.01(1)(b) and 940.23(1)(b), STATS. *See* § 939.75(2)(b). It states that these two sections do not apply to: "An act by a woman who is pregnant with an unborn child that results in the death of or great bodily harm, substantial bodily harm or bodily harm to that unborn child." Section 939.75(2)(b)3.

475

statute concerning a related subject is significant in showing that a different intention existed." *Kimberly-Clark Corp. v. Public Serv. Comm'n*, 110 Wis. 2d 455, 463, 329 N.W.2d 143, 147 (1983) (quoted source omitted). When the legislature in one subsection of a statute specifically criminalizes death or injury to unborn child victims, but in another subsection uses the general designation of "human being" victims, we conclude that the legislative intent is manifest—an unborn child is not to be included in the definition of "human being." On the contrary, the legislature has purposefully designed certain subsections to protect the interests of unborn children.

Moreover, we reject the State's contention that a "human being" can be an unborn child where the alleged perpetrator is the mother. There is no support for this argument in the statutory language. We are obligated to avoid construing a statute in a manner that produces absurd results. *See Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320, 327, 548 N.W.2d 519, 522 (1996). In this case, it would be absurd to conclude that a "human being" can be an unborn child if the perpetrator is the mother, where the definition of "human being" includes only persons who have been born alive.[5]

---

[5] Numerous states have addressed whether maternal conduct before the birth of a child can be criminally prosecuted under the state child abuse/endangerment or drug distribution statutes. Our research reveals only one state court of last appeal which has upheld a conviction for criminal child neglect against the mother for taking cocaine during her pregnancy. *See Whitner v. South Carolina,* 492 S.E.2d 777, 778 (S.C. 1997), *cert. denied,* 118 S. Ct. 1857 (1998) (concluding that a viable fetus is a "person" under the state's children's code). However, the ques-

■

Additionally, in *State ex rel. Angela M.W. v. Kruzicki*, 209 Wis. 2d 112, 137–38, 561 N.W.2d 729, 740 (1997), the supreme court held that because the legislature did not intend to include an unborn child within the definition of "child," CHIPS (child in need of protection or services) jurisdiction could not be exercised to protect an unborn child even in the case of prenatal drug use. There, the court determined that the legislature intended "child" to mean "a human being born alive" for purposes of a CHIPS proceeding. *See id.* at 127–28, 561 N.W.2d at 736. The court reasoned that because the legislature specifically provides for the protection of an unborn child in some statutes, this "demonstrates the ease and clarity with which the legislature may, if it so chooses, apply a statute to the unborn." *Id.* at 132, 561 N.W.2d at 738. We likewise determine that the legislature thoughtfully chose the wording of its definition of "human being" and, in doing so, did not choose to include an unborn child.

Even though Deborah's actions were egregious, we decline the State's overture to give the statute such a broad construction. Under such a construction, a woman could risk criminal charges for any perceived self-destructive behavior during her pregnancy that may result in injuries to her unborn child. Any reckless or dangerous conduct, such as smoking heavily or abus-

---

tion in *Whitner* has been answered by our supreme court in *State ex rel. Angela M.W. v. Kruzicki*, 209 Wis. 2d 112, 137–38, 561 N.W.2d 729, 740 (1997) (holding that a fetus is not considered a "child" in ch. 48, STATS., our state's children's code). Other state courts throughout the country have held that maternal conduct before the birth of a child does not warrant criminal prosecution under such statutes. *See Whitner*, 492 S.E.2d at 782 (listing cases).

ing legal medications, could become criminal behavior because the actions were taken while the woman was pregnant. "Taken to its extreme, prohibitions during pregnancy could also include the failure to act, such as the failure to secure adequate prenatal medical care, and overzealous behavior, such as excessive exercising or dieting." *Hillman v. Georgia*, 503 S.E.2d 610, 613 (Ga. Ct. App. 1998).

Additionally, the prosecution of a pregnant woman for prenatal behavior which affects the health of the unborn child reveals significant public policy implications. Many health officials agree that substance abuse in pregnant women is better addressed through treatment rather than the threat of punishment.[6] Another area of concern is that the imposition of criminal sanctions on pregnant women for prenatal conduct may hinder many women from seeking prenatal care and needed medical treatment because any act or omission on their part may render them criminally liable to the subsequently born child.[7] Obviously, these are complex

---

[6] The American Medical Association reported: "Many health and public welfare officials feel that the most effective way of preventing substance abuse in pregnant women is through education about potential harms and the provision of comprehensive treatment for their abuse. . . . [C]riminal penalties may exacerbate the harm done to fetal health by deterring . . . [the women] from obtaining help or care . . . ." Report of the American Medical Association Board of Trustees, *Legal Interventions During Pregnancy*, 264 JAMA 2663, 2667–68 (1990) [hereinafter JAMA]; *but cf.* Edgar Horger et al., *Cocaine in Pregnancy: Confronting the Problem*, 86 J. S.C. MED. ASS'N 527, 530 (1990) (results show that aggressive medical/legal approach to combat rising problem of cocaine in pregnancy may have merit).

[7] *See, e.g.*, JAMA, *supra* note 6, at 2666 (discussing the large variety of factors that can adversely affect the fetus); *Reinesto v.*

and controversial public policy considerations; there-fore, it is appropriate for the courts to defer to the legislature. We do so because "the legislature is in a better position than the courts to gather, weigh, and reconcile the competing policy proposals addressed to this sensitive area of the law." *Kruzicki*, 209 Wis. 2d at 134, 561 N.W.2d at 739.

Furthermore, the conclusion that these statutes were not intended to apply to conduct harming an unborn child is supported by the existence of abortion statutes that prohibit prosecuting a mother for abort-ing her unborn child. *See* §§ 940.13, 940.15(7), STATS. These statutes more appropriately address the present situation—one where a mother intends to harm her unborn child—and exempt a pregnant woman from prosecution.[8]

In the alternative, if the plain language of the stat-utes does not apply to an unborn child, the State asserts that because the unborn child survived and was successfully delivered, the "born alive" doctrine per-mits prosecution. Thirty-one states, by judicial decision, have adopted the "born alive" rule that if an unborn child suffers a prenatal injury at the hands of a third party and is born alive, certain civil or criminal charges may be brought against the third party. *See* Tony Hartsoe, *Person or Thing—In Search of the Legal Status of a Fetus: A Survey of North Carolina Law*, 17 CAMPBELL L. REV. 169, 212 & n.233 (1995) (listing

*Superior Court*, 894 P.2d 733, 736–37 (Ariz. Ct. App. 1995) (listing types of prenatal conduct that can harm a fetus, causing physical or mental abnormalities in a newborn).

[8] This state's antiabortion statute, § 940.04, STATS., was rendered unenforceable by *Roe v. Wade*, 410 U.S. 113 (1973). *See Larkin v. McCann*, 368 F. Supp. 1352, 1353 (E.D. Wis. 1974).

cases). Accordingly, the State argues that after the birth of M.M.Z., the applicable criminal statutes for a "born alive" child take effect. However, the State fails to point to a case with a situation, similar to this, in which the rule has been applied for self-abuse by the mother which negatively impacts an unborn child, later "born alive."

Specifically, the State posits that holding mothers accountable for injuries they inflict on their children prenatally is the next logical step beyond the courts' application of the "born alive" rule to third parties in *State v. Cornelius*, 152 Wis. 2d 272, 282–83, 448 N.W.2d 434, 438 (Ct. App. 1989). In *Cornelius*, the defendant was charged with homicide by intoxicated use of a motor vehicle for the subsequent death of an unborn child after it was involved in an automobile accident resulting from the defendant's intoxicated driving. *See id.* at 274–75, 448 N.W.2d at 435. Immediately after the accident, the unborn child was delivered at the hospital, but it died soon thereafter from injuries suffered in the auto accident. *See id.* at 275, 448 N.W.2d at 435. We upheld the homicide charge, reasoning that the unborn child qualified as a "human being" under § 939.22(16), STATS., because it was alive at birth. *See Cornelius*, 152 Wis. 2d at 277, 279, 448 N.W.2d at 435, 436. We also stated, "Our decision does not reach the issue of the rights of a fetus, and certainly does not discuss its rights vis-à-vis the mother. [The victim] was born alive and died as a result of injuries sustained in utero, and our decision should not be read more broadly than to allow a homicide charge under these circumstances." *Id.* at 282–83, 448 N.W.2d at 438.

In *Cornelius*, we relied upon § 939.22(16), STATS., to reach our conclusion and therefore did not apply the

"born alive" rule in that case. *See Cornelius*, 152 Wis. 2d at 280, 448 N.W.2d at 437 ("[H]ad the legislature not defined 'human being' in sec. 939.22(16), we would have applied the 'born alive' rule to fill that void."). Likewise in the present case, we arrive at our conclusion using purely statutory grounds; therefore, an extensive discussion of the common-law "born alive" rule is not necessary.[9]

Simply put, to be convicted of attempted first-degree intentional homicide and first-degree reckless injury, Deborah must attempt to kill or injure someone who has been born alive. This is not what Deborah was charged with doing. The decision whether to include an unborn child in the definition of a "human being" is a policy issue best addressed by our legislature. We read § 939.22(16), STATS., to have definitively answered this question; the legislature clearly intended to exclude an unborn child by defining a "human being" as one who has been born alive.

## CONCLUSION

We determine that an unborn child is not a "human being" because it is not one who has been born alive as required in § 939.22(16), STATS., and probable cause did not exist to charge Deborah with the crimes of attempted first-degree intentional homicide and

[9] Deborah also argues that her prosecution under these statutes would violate the privacy, equal protection and liberty constitutional guarantees. Because we are reversing the order denying her motion to dismiss the information on statutory grounds, we need not consider these issues. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (concluding that if the decision on one point disposes of an appeal, then the appellate court need not decide the other issues raised).

first-degree reckless injury. As a result, we reverse the circuit court's denial of the motion to dismiss the information.

*By the Court.*—Order reversed.