2006 UT App 5

**STATE of Utah, Plaintiff and Appellee,**

v.

**Kathleen Maria NIEBERGER, Defendant and Appellant.**

**No. 20040907–CA.**

Court of Appeals of Utah.

Jan. 12, 2006.

---

Shannon N. Romero, Joan C. Watt, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General's Office, Laura B. Dupaix, Assistant Attorney General, Salt Lake City, for Appellee.

Before BENCH, P.J., and BILLINGS, and THORNE, JJ.

## OPINION

THORNE, Judge:

¶ 1 Kathleen Nieberger appeals the trial court's denial of her motion to quash bind-

over on two counts of endangerment of a child, a third degree felony. *See* Utah Code Ann. § 76–5–112.5 (2003). We affirm and remand for further proceedings.

## BACKGROUND

¶ 2 In December 2003, police officers executed a search warrant at the home of Nieberger and her husband. The Niebergers had two children, ages two and three, who resided with them in the home. Nieberger spoke with police at the time of the search and told them that her husband had been selling marijuana for five years. She also admitted that she used marijuana occasionally and that marijuana and paraphernalia found on the living room entertainment center belonged to her. The shelf on which these materials were found was some five to six feet off the ground.

¶ 3 Police found other controlled substances and paraphernalia throughout Nieberger's house. These items included several ounces of marijuana in a cabinet above the kitchen counter, a metal pipe with marijuana residue in a kitchen drawer, a Valium pill in a baggie on the kitchen counter, a bong sitting on a television stand in the basement, and a broken bong on the floor of the master bedroom closet.

¶ 4 The State charged Nieberger with two counts of child endangerment, *see* Utah Code Ann. § 76–5–112.5, as well as two other drug-related counts that are not at issue in this appeal. A preliminary hearing was held, and the trial court bound Nieberger over for trial on all four counts. Nieberger then filed a motion seeking to quash the bindover on the child endangerment counts and to have Utah Code section 76–5–112.5 declared unconstitutional. *See id.* The trial court denied Nieberger's motion, and this court granted her

request to appeal from that interlocutory order.

## ISSUES AND STANDARDS OF REVIEW

¶ 5 Nieberger's appeal challenges the child endangerment statute's constitutionality on vagueness grounds, and challenges the trial court's finding of probable cause for bindover on the two child endangerment counts.

¶ 6 A constitutional challenge to a statute presents a question of law that we review for correctness. *See State v. Willis,* 2004 UT 93, ¶ 4, 100 P.3d 1218. "When addressing a constitutional challenge to a statute, we presume that the statute is valid and resolve any reasonable doubts in favor of constitutionality." *Id.*

¶ 7 "The determination of whether to bind a criminal defendant over for trial is a question of law." *State v. Clark,* 2001 UT 9, ¶ 8, 20 P.3d 300. "Accordingly, we review that determination without deference to the court below." *Id.*

## ANALYSIS

¶ 8 Nieberger was bound over under Utah Code section 76–5–112.5, which states that "any person who knowingly or intentionally causes or permits a child or elder adult to be exposed to, to ingest or inhale, or to have contact with a controlled substance, chemical substance, or drug paraphernalia ... is guilty of a felony of the third degree." Utah Code Ann. § 76–5–112.5(2). The statute defines "controlled substance," "chemical substance," and "drug paraphernalia," as well as "child" and "elder adult." [1] The statute does not provide definitions for "exposed to," "ingest or inhale," or "have contact with."

¶ 9 Nieberger argues on appeal that Utah Code section 76–5–112.5 is void for vagueness because of the undefined term "exposed to."

---

**1.** "Controlled substance" incorporates the definition found in Utah Code section 58–37–2 and includes both illegal drugs and controlled prescription drugs. Utah Code Ann. § 76–5–112.5(1)(c); *see also id.* § 58–37–2 (Supp.2005). "Chemical substance" refers to precursors or other chemicals intended to be used in the manufacture of a controlled substance. *Id.* § 76–5–112.5(1)(a). "Drug paraphernalia" incorporates the definition found in Utah Code section 58–

37a–3 and generally means any item used or intended to be used to possess or ingest illegal drugs. *Id.* § 76–5–112.5(1)(d); *see also id.* § 58–37a–3 (2002). "Child" means a person under age eighteen, *id.* § 76–5–112.5(1)(b); *see also id.* §§ 76–5–109(1)(a) (Supp.2005), and "elder adult" means a person sixty-five years of age or older. *Id.* § 76–5–112.5(1)(e); *see also id.* § 76–5–111 (2003).

She also argues that, under any permissible construction of the statute, the State did not produce sufficient evidence to bind her over for trial on child endangerment charges.

## I. Constitutionality of Utah Code Section 76–5–112.5

¶ 10 Nieberger's constitutional challenge to Utah's child endangerment statute rests solely on the "void-for-vagueness" doctrine. *See State v. Green,* 2004 UT 76,¶¶ 42–52, 99 P.3d 820 (analyzing vagueness challenge to Utah's bigamy statute). Nieberger argues that section 76–5–112.5 lacks " 'sufficient definiteness [such] that ordinary people can understand what conduct is prohibited' " and is so vague that it " 'encourage[s] arbitrary and discriminatory enforcement.' " *Id.* at ¶ 43 (quoting *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)).

 ¶ 11 We first examine whether the statute is sufficiently definite to have adequately warned Nieberger that her alleged conduct was illegal. Nieberger argues that the term "exposed to" in the statute is so vague in its meaning that she could not have been aware that her conduct would fall within its definition.[2] Utah Code Ann. § 76–5–112.5(2). She characterizes her prosecution as being based solely on possession of "marijuana and paraphernalia out of reach in a house where children live." We disagree with her characterization of the evidence against her, and hold that the term "exposed to" is not vague as applied to the facts and inferences presented at the preliminary hearing.

¶ 12 Nieberger substantially understates the evidence presented at the preliminary hearing. Police found controlled substances and drug paraphernalia in the living room, kitchen, basement, and master bedroom of Nieberger's home. Nieberger admitted that her husband had been selling marijuana for five years, that she occasionally used marijuana herself, and that marijuana and a pipe found in plain view in the living room belonged to her. Nieberger's children, two and three years old, lived in the home, and there is nothing to suggest that they lacked the ordinary mobility, perception, or curiosity that could be expected of children that age.[3] Nor does the record suggest that the children were in any way restricted from accessing the rooms where the various items were found. These circumstances present a much stronger inference of exposure than the mere possession of marijuana in a home where children reside.

 ¶ 13 Nevertheless, Nieberger argues that the need to avoid vagueness requires a narrow definition of "exposed to," as well as some implied requirement of risk of actual harm to the victim. Examination of section 76–5–112.5's evolution[4] indicates that neither of these suggestions is appropriate. Prior to 2002, section 76–5–112.5 prohibited placing protected persons "at risk of suffering bodily injury, substantial bodily injury, or serious bodily injury from exposure to, ingestion of, inhalation of, or contact with a controlled substance, chemical substance, or drug paraphernalia." Utah Code Ann. § 76–5–112.5 (Supp.2000). In 2002, the legislature amended the statute to its current form, removing the risk element and replacing it with "causes or permits a child or elder adult to be exposed to, to ingest or inhale, or to

---

**2.** Nieberger has not shown that the child endangerment statute infringes on any First Amendment or other constitutional right. Accordingly, we examine the statute for vagueness "as applied" without regard to whether it might be vague in other, hypothetical contexts. *State v. Green,* 2004 UT 76,¶ 44, 99 P.3d 820.

**3.** The State presented evidence from which it could be inferred that Nieberger's children could see and access marijuana and drug paraphernalia. Whether any particular minor or elder adult has the ability to see and access a particular object is a factual matter that must be resolved on a case-by-case basis, taking into account the

circumstances of the alleged exposure and the victim's physical abilities.

**4.** Ordinarily, our use of legislative history is limited to occasions where a statute is deemed to be ambiguous. *See State v. Beason,* 2000 UT App 109,¶ 19, 2 P.3d 459 ("Only if [statutory] language is ambiguous do we then turn to a consideration of legislative history and relevant policy considerations." (quotations and citation omitted)). The legislature's removal of an element from a statute does, however, establish that the omitted element is no longer part of the statute without regard to ambiguity. *See State v. Delmotte,* 665 P.2d 1314, 1315 (Utah 1983).

have contact with" the enumerated materials. *Id.* § 76–5–112.5 (2003).

¶ 14 We draw two conclusions from this amendment. First, contrary to Nieberger's argument, the legislature's express deletion of a risk element precludes us from writing such an element back into the statute. "The omission of the element in the revised statute logically can mean nothing but that the legislature's purpose deliberately was to remove [risk] as an element of the offense." *State v. Delmotte,* 665 P.2d 1314, 1315 (Utah 1983). Second, the pre–2002 statute applied to *any* form of exposure that resulted in a risk of bodily injury to a protected person. The "exposed to" element described a broad range of circumstances, but the reach of the statute was substantially limited by the requirement of actual risk. The removal of the risk element did nothing to change the original broad intent of the "exposed to" element, but rather expanded the statute's prohibition to all exposures, regardless of risk.[5]

¶ 15 We determine that a person of ordinary intelligence would understand that the facts presented at Nieberger's preliminary hearing, if proven with the applicable degree of mens rea, could support a conviction for child endangerment on an "exposed to" theory. Black's Law Dictionary defines "expose" as "[t]o show publicly, to display" and

> [t]o place in a position where the object spoken of is open to danger, or where it is' near or accessible to anything that may affect it detrimentally; as, to "expose" a child, or to expose oneself or another to a contagious disease or to danger or hazard of any kind.

*Black's Law Dictionary* 579 (6th ed.1990). Lay definitions of "expose" include "to ... subject to risk from a harmful action or condition," "to submit or make accessible to a particular action or influence," and "to cause to be visible or open to view." *Merriam Webster's Collegiate Dictionary* 410 (10th ed.1993). We cannot say that a person of ordinary intelligence would not place Nieberger's alleged actions, and the reasonable inferences available in this case, within the bounds of these broad definitions. Accordingly, Nieberger should have been on notice that her alleged actions might violate the statute. *Cf. Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 340, 72 S.Ct. 329, 96 L.Ed. 367 (1952) (noting that "one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line").

¶ 16 Having concluded that the statute is sufficiently definite to have notified Nieberger that her alleged conduct was prohibited, we turn next to whether the statute is sufficiently definite so as to discourage arbitrary and discriminatory enforcement. *See State v. Green,* 2004 UT 76, ¶ 50, 99 P.3d 820; *see also Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). "The United States Supreme Court has stated that to avoid unconstitutional vagueness, a statute must 'establish minimal guidelines to govern law enforcement' such that it avoids entrusting 'lawmaking to the moment-to-moment judgment of the policeman on his beat.'" *Green,* 2004 UT 76 at ¶ 50, 99 P.3d 820 (quoting *Kolender,* 461 U.S. at 358, 103 S.Ct. 1855).

¶ 17 Nieberger argues that section 76–5–112.5's failure to define the term "exposed to" impermissibly allows police officers, juries, and prosecutors to decide the reach of the statute's prohibitions. "In an as applied challenge, however, we must focus on

---

5. We do not disagree with Nieberger's assertion that the statute as written covers a wide range of behaviors and circumstances, some of which might otherwise seem innocuous. While we do not pass judgment on any particular situation outside the facts of this case, we note that the statute appears to represent the legislature's legitimate desire to protect the more vulnerable members of society from the dangers of drugs and related materials. Further, the broad reach of the statute does not create a vagueness problem. To the contrary, the statute gives clear notice that anyone responsible for the care of children or the elderly, or who has control over the enumerated materials, may not knowingly allow or cause the former to be exposed to the latter except as such items may be legally prescribed to the child or older adult. *See* Utah Code Ann. § 76–5–112.5(4) (establishing an affirmative defense when the sole theory of exposure is the administration of a controlled substance to a child or elder adult pursuant to the alleged victim's prescription for that substance and in accordance with the prescription instructions).

the particular conduct at hand and not on the possible conduct of hypothetical parties." *Id.* at ¶ 51; *see also United States v. LaHue*, 261 F.3d 993, 1007 (10th Cir.2001) ("[I]t is the application of the [challenged statutes] to defendants by law enforcement officials we review; in an 'as applied' examination, defendants may not generalize beyond the conduct with which they are charged."). We determine that police officers encountering the set of circumstances presented in Nieberger's case "would not be left to pursue their own personal predilections in determining the applicability of Utah's [child endangerment] statute." *Green*, 2004 UT 76 at ¶ 52, 99 P.3d 820. Nieberger's alleged acts of allowing her children to see and potentially access controlled substances and paraphernalia fall squarely within the statute's purview, "leaving no room for law enforcement officials to decide, in their discretion, that the statute's provisions should not apply." *Id.*

¶ 18 Nieberger has not shown that section 76–5–112.5 gave her insufficient notice that her alleged actions were potentially illegal, or that the statute presents the possibility for arbitrary enforcement under the facts of her case. Accordingly, her vagueness challenge to section 76–5–112.5 fails.

## II. Probable Cause for Bindover

¶ 19 Having determined that Nieberger has failed to identify a constitutional flaw in Utah Code section 76–5–112.5, we turn now to the question of whether the trial court properly bound Nieberger over under that statute. At a preliminary hearing, "the State must show probable cause by presenting sufficient evidence to establish that the crime charged has been committed and that the defendant has committed it." *State v. Hawatmeh*, 2001 UT 51, ¶ 14, 26 P.3d 223 (alterations omitted) (quoting *State v. Clark*, 2001 UT 9, ¶¶ 10–11, 20 P.3d 300); *see also* Utah R.Crim. P. 7(h)(2). To prevail at this stage, the prosecution must

> "produce believable evidence of all the elements of the crime charged, just as it would have to do to survive a motion for a directed verdict. However, unlike a motion for a directed verdict, this evidence need not be capable of supporting a finding

of guilt beyond a reasonable doubt. Instead, ... the quantum of evidence necessary to support a bindover is less than that necessary to survive a directed verdict motion."

*Hawatmeh*, 2001 UT 51 at ¶ 14, 26 P.3d 223 (quoting *Clark*, 2001 UT 9 at ¶¶ 15–16, 20 P.3d 300). The probable cause standard is met if the State " 'present[s] sufficient evidence to support a *reasonable belief* that an offense has been committed and that the defendant committed it.' " *Id.* at ¶ 15 (quoting *Clark*, 2001 UT 9 at ¶ 16, 20 P.3d 300).

¶ 20 Applying these standards to this case, we must determine whether the State presented sufficient evidence to support a reasonable belief that Nieberger committed the crime of child endangerment. A defendant "should be bound over for trial unless the evidence is wholly lacking and incapable of reasonable inference to prove some issue which supports the [State's] claim." *State v. Virgin*, 2004 UT App 251, ¶ 11, 96 P.3d 379 (quotations and citations omitted), *cert. granted*, 106 P.3d 743 (Utah 2004). Moreover, the trial court "should view the evidence in a light most favorable to the prosecution and resolve all inferences in favor of the prosecution." *Id.* (quotations and citation omitted).

¶ 21 Certainly one inference available from the evidence presented at the preliminary hearing is that put forward by Nieberger: that she had taken reasonable precautions to prevent her children's exposure to the controlled substances in her home and in fact prevented that exposure from occurring. However, we must view the evidence in the light most favorable to the State, drawing all reasonable inferences in its favor. Viewed in this light, the evidence also clearly supports a "reasonable belief" that Nieberger caused or permitted her children to be exposed to controlled substances and drug paraphernalia. *Hawatmeh*, 2001 UT 51 at ¶ 16, 26 P.3d 223; *see also* Utah Code Ann. § 76–5–112.5(2).

¶ 22 The factual circumstances of this case, when viewed in the light most favorable to the State, support a reasonable inference that the Nieberger home was a frequent site for the use and sale of marijuana, and that

Nieberger's children were not isolated from that lifestyle. To the contrary, the evidence suggests that items of contraband were kept around the house in various places that were visible and accessible to the children, and that Nieberger knowingly permitted this to occur. Given the breadth of the term "exposed to," these inferences are sufficient to support a reasonable belief that Nieberger knowingly caused or permitted her children to be exposed to controlled substances.[6] Accordingly, the trial court acted properly in binding Nieberger over for trial and denying her motion to quash that bindover.

### CONCLUSION

¶ 23 Nieberger has failed to demonstrate that Utah Code section 76–5–112.5 is unconstitutional or that the trial court erred in finding probable cause to bind her over under that statute. Accordingly, we affirm the trial court's order denying Nieberger's motion to quash and remand this matter for further proceedings.

¶ 24 WE CONCUR: RUSSELL W. BENCH, Presiding Judge, and JUDITH M. BILLINGS, Judge.

---

**6.** We stress that the reasonable belief standard is far short of the standard required for conviction, i.e., proof beyond a reasonable doubt.