2006 UT App 6

STATE of Utah, Plaintiff and Appellee,

v.

Becky Lynne DRAPER, Defendant and Appellant.

No. 20040879–CA.

Court of Appeals of Utah.

Jan. 12, 2006.

Shannon N. Romero and Joan C. Watt, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, and Laura B. Dupaix, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BENCH, BILLINGS, and THORNE.

OPINION

THORNE, Judge:

¶ 1 Becky Draper was charged with a single count of endangerment of a child, a third degree felony, *see* Utah Code Ann. § 76–5–112.5 (2003), after she allegedly exposed her infant to a controlled substance by breastfeeding after using marijuana. Draper appeals the trial court's denial of her motion to quash bindover on that charge. We reverse.

BACKGROUND

¶ 2 On January 9, 2004, police officers executed a search warrant at Draper's residence. Draper was present when the offi-

cers arrived and spoke with them at the scene. Draper informed the police that her husband had been selling marijuana for about eighteen months. She did not, however, admit to any drug use herself. The search revealed marijuana and paraphernalia, both of which were discovered in the same basement room. The search also revealed a quantity of cash in a dresser in Draper's bedroom, which she admitted was probably from drug sales. Police discovered a small amount of marijuana in the same dresser drawer.

¶ 3 On January 20, 2004, Karen Barnes, an investigator with the Division of Child and Family Services (DCFS), made an unannounced visit to Draper's home to investigate possible child endangerment of six-month-old T.D. relating to reported drug activity in the home. Draper confirmed to Barnes that her husband had been selling and using marijuana. Barnes asked Draper about her own drug use, and Draper admitted to having used marijuana twice since T.D. was born: once on December 31, 2003, New Year's Eve; and once on January 9, 2004, after the police had executed the warrant and left the premises. As Barnes and Draper were talking, Draper began to nurse T.D. Barnes discussed with Draper "the dangers of using marijuana and nursing" and "how marijuana and any other drugs go through the breast milk and to the child," but did not request a drug test of Draper or T.D. or take any other action at that time.

¶ 4 On February 10, Barnes was summoned to Draper's house by police officers who were arresting Draper on an unrelated warrant. Barnes spoke with Draper, who again denied using marijuana since January 9. She also stated that she did not know if her husband was still selling marijuana but that she had been telling him to "get everything out of the home."

¶ 5 Draper was eventually charged with child endangerment arising from the January 20 breastfeeding incident witnessed by Barnes. Draper was bound over for trial after a preliminary hearing at which Barnes testified. Barnes confirmed that neither Draper nor T.D. had ever been tested for drugs in relation to the child endangerment charge. Aside from Barnes's testimony, the State presented no evidence that marijuana use contaminates breast milk with a controlled substance or of the degree or duration of any such contamination.

¶ 6 Draper filed a motion seeking to quash the bindover and declare Utah Code section 76–5–112.5 unconstitutional. The trial court denied the motion, and this court allowed Draper to bring this interlocutory appeal. In *State v. Nieberger*, 2006 UT App 5, a companion case that was argued and briefed concurrently with this case, we rejected constitutional arguments identical to those raised by Draper.[1] Accordingly, we address only the question of whether the trial court properly bound Draper over for trial.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 7 Draper's appeal challenges the trial court's finding of probable cause for bindover on a charge of child endangerment. "The determination of whether to bind a criminal defendant over for trial on a particular charge is a question of law." *State v. Clark*, 2001 UT 9, ¶ 8, 20 P.3d 300. "Accordingly, we review that determination without deference to the court below." *Id.*

## ANALYSIS

■ ¶ 8 At a preliminary hearing, "the State must show probable cause by presenting sufficient evidence to establish that the crime charged has been committed and that

---

1. In *State v. Nieberger*, 2006 UT App 5, we determined that Utah Code section 76–5–112.5's "exposed to" language, while very broad, was neither indefinite nor encouraging of arbitrary enforcement when applied to the facts of that case. Utah Code Ann. § 76–5–112.5; *see Nieberger*, 2006 UT App 5 at ¶¶ 10–18. Given our disposition of the present case on non-constitutional grounds, and the lack of expert testimony or other scientific evidence in the record, we decline to undertake an as-applied vagueness analysis of Draper's bindover. We note without deciding, however, that under *Nieberger's* broad definition of "exposed to," a child endangerment charge could likely be premised on the furnishing of breast milk that was contaminated with a controlled substance, so long as admissible evidence of that contamination and the resulting exposure is presented. *See id.* at ¶¶ 14–15.

the defendant has committed it." *State v. Hawatmeh*, 2001 UT 51, ¶ 14, 26 P.3d 223 (alterations omitted) (quoting *Clark*, 2001 UT 9 at ¶ 10, 20 P.3d 300); *see also* Utah R.Crim. P. 7(h)(2). To prevail at this stage, the prosecution must

> "produce believable evidence of all the elements of the crime charged, just as it would have to do to survive a motion for a directed verdict. However, unlike a motion for a directed verdict, this evidence need not be capable of supporting a finding of guilt beyond a reasonable doubt.
>
> Instead, . . . the quantum of evidence necessary to support a bindover is less than that necessary to survive a directed verdict motion."

*Hawatmeh*, 2001 UT 51 at ¶ 14, 26 P.3d 223 (alteration in original) (quoting *Clark*, 2001 UT 9 at ¶¶ 15–16, 20 P.3d 300). The State meets the probable cause standard if it " 'present[s] sufficient evidence to support a *reasonable belief* ' " that the defendant has committed the offense charged. *Id.* at ¶ 15 (quoting *Clark*, 2001 UT 9 at ¶ 16, 20 P.3d 300).

¶ 9 The State's evidence against Draper on the child endangerment charge came exclusively from Barnes, a DCFS investigator. Barnes testified that she first contacted Draper on January 20, 2004, after DCFS received notice of the results of the search warrant. Draper admitted to Barnes that she had used marijuana twice since T.D. was born, once on December 31, 2003, and once on January 9, 2004 after police had executed the search warrant. As Barnes was talking with Draper, Draper began to nurse her infant. Barnes testified that she then talked with Draper about "the dangers of using marijuana and nursing" and "how marijuana and any other drugs go through the breast milk and to the child." After this testimony, the trial court found that it had "evidence at this point that breast-feeding

will transmit the [m]arijuana, some substance from [m]arijuana through breast milk to the child if it is smoked."

¶ 10 We see no admissible evidence in support of this finding. Although Barnes made several references to marijuana passing into breast milk and on to a nursing infant, the question of whether marijuana was actually present in Draper's breast milk when she nursed her infant [2] appears to be of sufficient scientific complexity as to be " 'beyond the realm of common experience.' " *State v. Rothlisberger*, 2004 UT App 226, ¶ 26, 95 P.3d 1193 (citation omitted), *cert. granted*, 106 P.3d 743 (Utah 2004) (holding that police chief's testimony regarding the significance of the quantity of methamphetamine found was necessarily based on scientific, technical, or other specialized knowledge, and was therefore properly classified as expert testimony). As such, the presence of marijuana and T.D.'s resulting exposure must be shown by "the type of testimony that a witness could offer only if first qualified as an expert." *Id.* at ¶ 26; *see also* Utah R. Evid. 701, 702 (governing expert testimony); *Reeves v. Geigy Pharm., Inc.*, 764 P.2d 636, 640 (Utah Ct.App.1988) (requiring expert medical testimony to establish that defendant's pharmaceuticals caused plaintiff's skin condition); *Hoopiiaina v. Intermountain Health Care*, 740 P.2d 270, 271 (Utah Ct.App. 1987) (requiring expert medical testimony to show that drug caused injury).

¶ 11 Although the burden on the State at a preliminary hearing is not heavy, the evidence presented in support of bindover must generally be admissible under the Utah Rules of Evidence. *See* Utah R.Crim. P. 7(i)(1) ("Unless otherwise provided, a preliminary examination shall be held under the rules and laws applicable to criminal cases tried before a court."). Here, the trial court concluded that there was probable cause to

---

**2.** It is unclear whether the State is basing its charge on the January 20 nursing witnessed by Barnes or on some inferred nursing incident occurring closer in time to Draper's drug use. We recognize the State's argument for a reasonable inference that Draper regularly breast-fed T.D. from birth and the resulting inference that Draper nursed shortly after using marijuana on

December 31, 2003 and January 9, 2004. However, even if we were to infer that Draper nursed mere hours after consuming marijuana, the nature and duration of any resulting contamination would remain issues requiring expert testimony or other scientific evidence to establish, the details of which would not be subject to judicial notice.

believe that Draper exposed[3] T.D. to a controlled substance by nursing him on January 20 after having consumed marijuana on January 9. However, the State did not present any expert testimony at the preliminary hearing that marijuana can contaminate breast milk, of the degree or duration of that contamination, or whether the milk would be contaminated with a controlled substance or merely the metabolite of a controlled substance.[4] Without such testimony, there can be no reasonable inference that Draper exposed T.D. to marijuana through her breast milk. *See State v. Hester*, 2000 UT App 159, ¶ 16, 3 P.3d 725 (distinguishing "between drawing a reasonable inference and merely speculating about possibilities").

¶ 12 Barnes might have qualified as an expert on this issue based on her experience and training as a DCFS investigator, but the State offered no foundation for her potential expertise at Draper's preliminary hearing. *See Rothlisberger*, 2004 UT App 226 at ¶ 24, 95 P.3d 1193 ("It is well settled that witnesses can be qualified as experts not only on the basis of formal educational training, but also on the basis of their own personal or vocational experiences."); *see also* Utah R. Evid. 702. Without a foundation for her expertise, Barnes cannot be considered an expert witness in this case. Accordingly, the trial court erred when it relied on her lay opinion to support its finding of probable cause that Draper exposed T.D. to marijuana by nursing T.D. on January 20.

¶ 13 The presence of marijuana in Draper's breast milk at the time she nursed T.D. is the heart of the State's case against Draper. Without some expert testimony suggesting that Draper's breast milk was likely to have contained a controlled substance at any particular time, there is no probable cause to believe that she violated section 76–5–112.5 on the theory charged by the State. Accordingly, the trial court erred in binding Draper over for trial on that charge.

### CONCLUSION

¶ 14 Without deciding the issue today, we assume that a prosecution under section 76–5–112.5 could proceed on a theory of exposure to a controlled substance through contaminated breast milk. However, absent sufficient expert testimony to establish the existence, nature, and duration of the contamination, there is no probable cause to believe a crime was committed. The State presented no such evidence at Draper's preliminary hearing, and thus, we reverse the trial court's denial of Draper's motion to dismiss.

¶ 15 WE CONCUR: RUSSELL W. BENCH, Presiding Judge and JUDITH M. BILLINGS, Judge.

---

**3.** The trial court also found probable cause to believe that Draper had allowed her infant to "ingest" a controlled substance in violation of the child endangerment statute. Utah Code Ann. § 76–5–112.5(2). The lack of expert testimony is also fatal to that theory, and we will refer only to the exposure theory throughout this opinion.

**4.** Exposing a child to a controlled substance violates Utah Code section 76–5–112.5; exposing a child to a controlled substance metabolite does not. *See* Utah Code Ann. § 76–5–112.5; *State v.*

*Ireland*, 2005 UT App 22, ¶ 12, 106 P.3d 753 (noting that legislature uses the term "metabolite" when it intends to refer to metabolites rather than their parent substances), *cert. granted*, No. 20050279, 2005 Utah LEXIS 174 (Utah June 1, 2005). Of course, if exposure to a metabolite actually causes injury or the risk of injury, prosecution might be appropriate under other statutes. *See* Utah Code Ann. §§ 76–5–109 (child abuse), – 111 (reckless endangerment) (2003 & Supp. 2005).