2009 ND 36

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Michelle GEISER a/k/a Michelle Behles, Defendant and Appellant.**

No. 20080120.

Supreme Court of North Dakota.

April 2, 2009.

Ladd R. Erickson (argued), State's Attorney, Washburn, ND, for plaintiff and appellee.

Thomas J. Glass (argued), Bismarck, ND, for defendant and appellant.

Thomas A. Dickson, Dickson Law Office, Bismarck, ND, and Tiloma Jayasinghe and Lynn M. Paltrow, National Advocates for Pregnant Women, New York, NY, on brief for amicus curiae defendant and appellant.

KAPSNER, Justice.

[¶ 1] Michelle Geiser ("Geiser") appeals from a district court order denying her motion to dismiss the charge of endangerment of a child. We hold the district court erred by concluding the charge of endangerment of a child applies to an unborn child. We reverse and remand to allow Geiser the opportunity to withdraw her guilty plea to the charge of endangerment of a child.

I.

[¶ 2] On or about September 24, 2007, Geiser allegedly overdosed on prescription drugs. At this time, she was approximately 29 weeks pregnant. Geiser was taken by ambulance to Medcenter One in Bismarck, North Dakota. The State asserts the alleged overdose resulted in the demise of the unborn child.

[¶ 3] The State charged Geiser with the following offenses, alleging they occurred on or about September 24, 2007: possession of a controlled substance in violation of N.D.C.C. § 19–03.1–23; ingesting a controlled substance in violation of N.D.C.C. § 19–03.1–22.3; and endangerment of a child or vulnerable adult in violation of N.D.C.C. § 19–03.1–22.2.

[¶ 4] Geiser filed a motion to dismiss the charge of endangerment of a child or vulnerable adult. Geiser asserted the term "child" means an individual under the age of eighteen years and does not include an unborn child. The State resisted Geiser's motion. The State contended the term "child" includes a viable unborn child.

[¶ 5] The district court denied Geiser's motion to dismiss. In its order, the district court relied on *Hopkins v. McBane,* 359 N.W.2d 862, 865 (N.D.1984), in which this Court held a wrongful-death action may be brought against one whose tortious conduct causes the death of a viable unborn child. The district court also relied on *Whitner v. State of South Carolina,* 328 S.C. 1, 492 S.E.2d 777, 780 (1997), in which the Supreme Court of South Carolina determined a viable fetus is a person for the purpose of a statute proscribing child abuse. The district court noted *Whitner* is the minority view opinion and held:

> Because North Dakota has recognized a viable unborn child as a human being or person which has life, it would be inconsistent to construe a viable unborn child as a human being or person for the purposes of imposing civil liability while refusing to give it a similar classification in the criminal context.

Geiser entered a conditional plea of guilty to the charge of endangerment of a child or vulnerable adult under N.D.R.Crim.P. 11(a)(2), reserving her right to appeal the district court's denial of her motion to dismiss.

II.

[¶ 6] The issue before this Court is whether the charge of endangerment of a child or vulnerable adult applies to an unborn child. This issue is one of statutory interpretation. "The interpretation of a statute is a question of law, fully reviewable on appeal." *Grey Bear v. N.D. Dep't of Human Servs.,* 2002 ND 139, ¶ 7, 651 N.W.2d 611 (quoting *Olander Contracting*

*Co. v. Gail Wachter Invs.,* 2002 ND 65, ¶ 43, 643 N.W.2d 29).

[¶ 7] The State charged Geiser under N.D.C.C. § 19–03.1–22.2(2), which provides:

Unless a greater penalty is otherwise provided by law, a person who knowingly or intentionally causes or permits a child or vulnerable adult to be exposed to, to ingest or inhale, or to have contact with a controlled substance, chemical substance, or drug paraphernalia as defined in subsection 1, is guilty of a class C felony.

Section 19–03.1–22.2(1)(b), N.D.C.C., states for the purposes of this section, " '[c]hild' means an individual who is under the age of eighteen years."

### A.

[¶ 8] When interpreting statutes, this Court has a duty to ascertain the Legislature's intent. *Singha v. N.D. State Bd. of Medical Examiners,* 1998 ND 42, ¶ 16, 574 N.W.2d 838 (citing *County of Stutsman v. State Hist. Soc'y,* 371 N.W.2d 321, 325 (N.D.1985)). "The Legislature's intent initially must be sought from the language of the statute as a whole." *Id.* (citing *County of Stutsman,* 371 N.W.2d at 325). This Court construes the words in a statute in their plain, ordinary, and commonly understood sense. N.D.C.C. § 1–02–02; *Singha,* 1998 ND 42, ¶ 16, 574 N.W.2d 838 (citing *County of Stutsman,* 371 N.W.2d at 327).

[¶ 9] The State contends, "a plain reading of the statute supports a finding that a 'child' includes the child at issue in this case and if the [L]egislature disagrees [it has] every ability to say so." Section 19–03.1–22.2(1)(b), N.D.C.C., provides " '[c]hild' means an individual who is under the age of eighteen years." Rather than a "plain reading" of the statute, the State is urging an interpretation that is more ex-

pansive than the definition of a "child" contained in the plain language of N.D.C.C. § 19–03.1–22.2(1)(b). We, therefore, review extrinsic evidence to further interpret and construe the statute and determine whether that expansive interpretation is consonant with legislative intent.

### B.

[¶ 10] One type of extrinsic evidence we use to interpret statutes is legislative history. *State v. Leppert,* 2003 ND 15, ¶ 16, 656 N.W.2d 718 (citing *County of Stutsman,* 371 N.W.2d at 325). The legislative history of N.D.C.C. § 19–03.1–22.2 does not indicate that the Legislature intended the statute to apply to unborn children. *Hearing on H.B. 1351 Before the House Judiciary Comm.,* 58th N.D. Legis. Sess. (Jan. 22, 2003).

[¶ 11] The legislative history explains N.D.C.C. § 19–03.1–22.2 was modeled after a Utah statute. *Hearing on H.B. 1351 Before the Joint Senate and House Judiciary Comms.,* 58th N.D. Legis. Sess. (Jan. 22, 2003) (testimony of Jonathan Byers, Assistant Attorney General). Utah's child endangerment statute provides: " 'Child' means the same as that term is defined in Subsection 76–5–109(1)(a)." Utah Code Ann. § 76–5–112.5(1)(b). Section 76–5–109(1)(a), Utah Code Ann., states: " 'Child' means a human being who is under 18 years of age." While the Utah Court of Appeals and Supreme Court of Utah have discussed Utah's child endangerment statute, neither court has analyzed whether the statute applies to an unborn child. *See State v. Gallegos,* 2007 UT 81, ¶ 9, 171 P.3d 426; *State v. Nieberger,* 2006 UT App. 5, ¶¶ 8, 9, 128 P.3d 1223, *overruled by Gallegos,* 2007 UT 81, 171 P.3d 426; *State v. Draper,* 2006 UT App. 6, ¶ 1, 128 P.3d 1220; *State v. Atencio,* 2004 UT App. 93, ¶¶ 2, 7, 89 P.3d 191.

## C.

[¶ 12] This Court has held: "When the plain language of a statute is not 'transparent,' our codified rules of statutory interpretation direct us to look to the Code itself in determining the meaning of statutory terms." *N. X–Ray Co., Inc. v. State ex rel. Hanson*, 542 N.W.2d 733, 735 (N.D. 1996) (citing N.D.C.C. § 1–02–02). We review other provisions of the code to assist in the interpretation of N.D.C.C. § 19–03.1–22.2(1)(b).

■ [¶ 13] Section 14–10–01, N.D.C.C., states: "Minors are persons under eighteen years of age. In this code, unless otherwise specified, the term 'child' means 'minor'. Age must be calculated from the first minute of the day on which persons are born to the same minute of the corresponding day completing the period of minority." Geiser asserts N.D.C.C. § 14–10–01, clearly establishes that: " 'child' means a person who is a 'minor', whose existence and age is reckoned from the first minute of the day on which the person is born." The State contends if the Legislature intended "child" and "minor" to mean the same thing, it could have used the word "minor." However, N.D.C.C. § 14–10–01, provides: "In this code, unless otherwise specified, the term 'child' means 'minor.' " Therefore, whether the Legislature used the word "child" or "minor" is irrelevant, because the terms are equivalent. Additionally, the State asserts if the Legislature wanted N.D.C.C. § 14–10–01 to apply to N.D.C.C. § 19–03.1–22.2, it could have provided a cross reference to N.D.C.C. § 14–10–01, or it could have expressly stated so. However, N.D.C.C. § 14–10–01 expressly applies to the entire code unless otherwise specified; therefore, a cross reference to N.D.C.C. § 14–10–01 would be unnecessary and redundant. The Legislature has provided that the age of a child is calculated from the day on which the child

is born. N.D.C.C. § 14–10–01. An unborn child is not a child or minor according to N.D.C.C. § 14–10–01, and an unborn child is not a child under N.D.C.C. § 19–03.1–22.2(1)(b).

[¶ 14] Section 14–10–15, N.D.C.C., states: "A child conceived but not born is to be deemed an existing person so far as may be necessary for its interests in the event of its subsequent birth." This Court discussed N.D.C.C. § 14–10–15 in *Hopkins*, 359 N.W.2d at 864. In *Hopkins*, the issue before this Court was whether North Dakota's wrongful-death statute authorized a wrongful-death action on behalf of a viable unborn child. *Id.* at 863. To determine whether the statute applied to the viable unborn child, this Court had to determine "whether or not the stillbirth of a child constitutes the 'death of a person' for purposes of applying [the wrongful-death statute]." *Id.* at 864.

■ [¶ 15] This Court in *Hopkins* held:

> The purpose of [N.D.C.C. § 14–10–15] is to ensure and to protect the interests of a child subsequent to its conception but prior to its birth. We believe that it would be inconsistent with that purpose to construe the section as a provision of limitation which denies "person" status to a stillborn child for purposes of applying the wrongful-death statute.

*Id.* This Court determined the wrongful-death statute authorized a claim to be brought against one whose tortious conduct caused the death of a viable unborn child. *Id.* at 865. Therefore, according to our holding in *Hopkins*, an unborn child has rights against a third party. *Id.* at 864. However, this holding does not necessarily imply that an unborn child has rights against the mother.

■ [¶ 16] In *Hopkins*, this Court noted the wrongful-death statute "is a remedi-

al statute whose purpose is to provide a right of action against one whose tortious conduct causes the death of another. Consequently, to the extent that it might be argued there is ambiguity under [the statute], it should be construed liberally to accomplish its objective." *Id.* at 865 (citations omitted). *Hopkins* and the present case are different. In *Hopkins,* the statute this Court interpreted was remedial, and we construed it liberally. *Id.* In the present case, we are interpreting a criminal statute, and "[c]riminal statutes are strictly construed in favor of the defendant and against the government." *State v. Beciraj,* 2003 ND 173, ¶ 14, 671 N.W.2d 250 (citing *State v. Rue,* 2001 ND 92, ¶ 33, 626 N.W.2d 681).

[¶ 17] Subsequent to our decision in *Hopkins,* the Legislature enacted N.D.C.C. ch. 12.1–17.1. 1987 N.D. Sess. Laws ch. 166, § 1. Chapter 12.1–17.1, N.D.C.C., recognized that, consistent with the holding in *Hopkins,* the rights of unborn children are protected against actions of third parties. Chapter 12.1–17.1, N.D.C.C., governs offenses against unborn children and supports our conclusion that an unborn child is not included in the definition of a child, under N.D.C.C. § 19–03.1–22.2(1)(b). For the purposes of N.D.C.C. ch. 12.1–17.1, the Legislature defined "unborn child" as: "the conceived but not yet born offspring of a human being, which, but for the action of the actor would beyond a reasonable doubt have subsequently been born alive." N.D.C.C. § 12.1–17.1–01(3). This makes it clear that when the Legislature wants to cover unborn children, it does so expressly. If the Legislature in 2003, enacting N.D.C.C. § 19–03.1–22.2, intended N.D.C.C. § 19–03.1–22.2(1)(b) to include unborn children, it could have provided a similar definition of unborn children, as in the previously existing N.D.C.C. ch. 12.1–17.1.

[¶ 18] Chapter 12.1–17.1, N.D.C.C., makes it a crime for a person to commit the following acts against an unborn child: murder, manslaughter, negligent homicide, aggravated assault, and assault. N.D.C.C. §§ 12.1–17.1–02 to 12.1–17.1–06. The Legislature enacted N.D.C.C. ch. 12.1–17.1 post-*Hopkins.* 1987 N.D. Sess. Laws ch. 166, § 1. The legislators contemplated whether "person," for the purposes of N.D.C.C. ch. 12.1–17.1, should include the pregnant woman. *Hearing on H.B. 1557 Before the Senate Judiciary Comm.,* 50th N.D. Legis. Sess. (March 11, 1987). Ultimately, the Legislature determined for purposes of N.D.C.C. ch. 12.1–17.1, "person" does not include the pregnant woman. N.D.C.C. § 12.1–17.1–01(2). Therefore, the mother of the unborn child cannot be charged with a crime against her unborn child under N.D.C.C. ch. 12.1–17.1.

[¶ 19] If we hold N.D.C.C. § 19–03.1–22.2(1)(b) includes an unborn child, Geiser would be guilty of endangerment of a child, with the victim being her unborn child. Charging a pregnant woman for a crime allegedly committed against her unborn child violates the express legislative policy of N.D.C.C. ch. 12.1–17.1. Our holding that a pregnant woman cannot be charged for a crime allegedly committed against her unborn child under N.D.C.C. § 19–03.1–22.2(1)(b) coincides with both *Hopkins* and N.D.C.C. ch. 12.1–17.1.

### D.

[¶ 20] "Child" is defined as "an individual who is under the age of eighteen years" in N.D.C.C. § 19–03.1–22.2(1)(b). Section 14–10–01, N.D.C.C., provides: "Minors are persons under eighteen years of age. In this code, unless otherwise specified, the term 'child' means 'minor'. Age must be calculated from the first minute of the day on which persons are born

to the same minute of the corresponding day completing the period of minority." While these definitions appear to coincide, to the extent they are inconsistent, we apply the rule of lenity. The rule of lenity "requires ambiguous criminal statutes to be construed in a defendant's favor." *State v. Laib*, 2002 ND 95, ¶ 15, 644 N.W.2d 878.

### III.

[¶ 21] We conclude N.D.C.C. § 19–03.1–22.2 does not apply to an unborn child. We reverse and remand the district court order to allow Geiser an opportunity to withdraw her guilty plea to the charge of endangerment of a child.

[¶ 22] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, JJ., concur.

SANDSTROM, Justice, concurring specially.

[¶ 23] I agree with the majority that the conviction must be set aside. Under our system of separation of powers, it is not the role of this Court to criminalize what the legislature has not clearly made criminal. *State v. Mosbrucker*, 2008 ND 219, ¶ 42, 758 N.W.2d 663 (Sandstrom, J., dissenting).

[¶ 24] I disagree with the majority that this Court can rely on N.D.C.C. § 14–10–01 for its definition of "a child." The introductory language of N.D.C.C. § 14–10–01 specifically provides that it applies only if no other definition is supplied: "In this code, *unless otherwise specified,* the term 'child' means 'minor.'" (Emphasis added.) The section 14–10–01 definition does not apply here because N.D.C.C. § 19–03.1–22.2 specifically provides a definition of "a child":

1. For purposes of this section:

   . . . .

b. "Child" means an individual who is under the age of eighteen years.

. . . .

In addition, the expansive application given by the majority to the N.D.C.C. § 14–10–01 definition of "a child" throughout the code would radically alter our probate laws, N.D.C.C. ch. 30.1, as well as other provisions of the code.

[¶ 25] Extensive review of the legislative history of N.D.C.C. § 19–03.1–22.2 reflects no discussion of application to the unborn. The legislative discussion focused primarily on the risk to children living where methamphetamine and other dangerous substances were being produced or were otherwise present. *Hearing on H.B. 1351 Before the Joint Senate and House Judiciary Comm.*, 58th N.D. Legis. Sess. (Jan. 22, 2003) (testimony of Jonathan Byers, Assistant Attorney General). In addition, the North Dakota Legislative Assembly has specifically excluded the mother from the application of the statute relating to conduct causing the death of an unborn child. N.D.C.C. § 12.1–17.1–01(2).

[¶ 26] Although statutory language differs, the overwhelming majority of states that have looked at this question have concluded that it does not apply to the unborn. *Reinesto v. Superior Ct. of the State of Arizona*, 182 Ariz. 190, 894 P.2d 733 (App.1995); *Reyes v. Super. Ct. of the State of California*, 75 Cal.App.3d 214, 141 Cal.Rptr. 912 (Cal.Ct.App.1977); *State v. Gethers*, 585 So.2d 1140 (Fla.Dist.Ct.App. 1991); *State v. Luster*, 204 Ga.App. 156, 419 S.E.2d 32 (1992); *Com. v. Welch*, 864 S.W.2d 280 (Ky.1993); *Kilmon v. State*, 394 Md. 168, 905 A.2d 306 (2006); *Sheriff, Washoe County v. Encoe*, 110 Nev. 1317, 885 P.2d 596 (1994); *State v. Martinez*, 139 N.M. 741, 137 P.3d 1195 (App.2006); *State v. Gray*, 62 Ohio St.3d 514, 584 N.E.2d 710 (1992); *Richards v. State*, 2005 WL

2138244; *Collins v. State,* 890 S.W.2d 893 (Tex.Ct.App.1994); *State v. Dunn,* 82 Wash.App. 122, 916 P.2d 952 (1996); *State v. J.Z.,* 228 Wis.2d 468, 596 N.W.2d 490 (App.1999). Only South Carolina, looking at the specific language of its statute in conjunction with its purpose and the policy of the law, reached a contrary result. *Whitner v. State,* 328 S.C. 1, 492 S.E.2d 777, 779–80 (1997) (acknowledging that South Carolina has long recognized that viable fetuses are persons holding certain legal rights and privileges, concluding "it would be absurd to recognize the viable fetus as a person for purposes of homicide laws and wrongful death statutes but not for the purposes of statutes proscribing child abuse").

[¶ 27] Lenity requires deference to the accused when the scope of a statute does not clearly apply. *State v. Laib,* 2002 ND 95, ¶ 15, 644 N.W.2d 878.

[¶ 28] I agree that the criminal judgment must be reversed.

[¶ 29] DANIEL J. CROTHERS, J., concurs.