2013 ND 49

**STATE of North Dakota, Plaintiff and Appellant**

v.

**Alexis STEGALL, Defendant and Appellee.**

**State of North Dakota, Plaintiff and Appellant**

v.

**Chelsea Hettich, Defendant and Appellee.**

**State of North Dakota, Plaintiff and Appellant**

v.

**Kimberlie Nicole Lamon, Defendant and Appellee.**

Nos. 20120362, 20120365, 20120386.

Supreme Court of North Dakota.

April 4, 2013.

Nathan K. Madden (argued), Assistant State's Attorney, Williston, N.D., for plaintiff and appellant.

Adrianne L. Fernstrom (argued), N.D. Public Defenders' Office, Williston, N.D., for defendant and appellee Alexis Stegall.

Mark S. Douglas (appeared), N.D. Public Defenders' Office, Williston, N.D., for defendant and appellee Chelsea Hettich.

Robert W. Martin (appeared), N.D. Public Defenders' Office, Minot, N.D., for defendant and appellee Kimberlie Nicole Lamon.

MARING, Justice.

[¶ 1] The State appeals the trial courts' orders dismissing three separate criminal complaints of endangerment of a child against Alexis Stegall, Chelsea Hettich, and Kimberlie Lamon ("Defendants"). We hold that the trial courts properly dismissed the criminal complaints against the Defendants by concluding the charge of endangerment of a child under N.D.C.C. § 19–03.1–22.2 does not apply to acts committed by the mother against an unborn child. We affirm the trial courts' orders.

I

[¶ 2] This case arises out of three separate criminal cases and has been consolidated on appeal. For purposes of clarity and our analysis, we discuss the factual background of each case separately.

A

[¶ 3] On December 28, 2011, Stegall gave birth to A.S. The State alleges, following the birth, A.S. tested positive for methamphetamine. On December 29, 2011, the State charged Stegall with endangerment of a child. The trial court established a scheduling order requiring all motions to be filed on or by March 16, 2012. Prior to the deadline, Stegall absconded and her trial counsel withdrew as counsel. The record indicates that Stegall was apprehended on July 9, 2012, and the trial court subsequently appointed her new counsel.

[¶ 4] On August 16, 2012, prior to trial, Stegall moved to dismiss the complaint under N.D.R.Crim.P. 12(b)(2). Stegall argued the State failed to allege in the complaint or affidavit of probable cause a crime under N.D.C.C. § 19–03.1–22.2. Stegall argued that an individual cannot be charged with endangerment of a child for prenatal ingestion of a controlled substance, as an unborn child is not a child under the statute. The State resisted the motion and argued that, after the child's birth, A.S. continued to be exposed to the controlled substance. The trial court dismissed the State's complaint, concluding "there [were] no allegations that [Stegall] knowingly or intentionally caused, or permitted her child to be exposed to, to ingest or inhale, or to have contact with a controlled substance, chemical substance, or drug paraphernalia following A.S.'s birth."

B

[¶ 5] In April 2012, the State charged Hettich with two counts of endangerment of a child, after Hettich gave birth to twins who had methamphetamine present in their systems.

[¶ 6] At a preliminary hearing, Officer Ryan Zimmerman testified that a urinalysis first revealed that Hettich and the twin children had methamphetamine in their systems. A subsequent meconium, an infant's first stool, test was performed. John Doe I tested positive for methamphetamine, and John Doe II tested negative. Officer Zimmerman also testified, that after their birth but before testing, the children were not exposed to methamphetamine by Hettich or any other person. The exposure occurred prior to birth.

[¶ 7] Hettich moved to dismiss the complaint under N.D.R.Crim.P. 12(b)(2). She argued the State failed to allege she

committed any criminal act upon her child postpartum. The State argued that the child was "exposed" to methamphetamine postpartum and the mother was criminally liable. The trial court dismissed the complaint, concluding the State failed to prove in its information or affidavit of probable cause allegations supporting a charge of endangerment of a child under N.D.C.C. § 19–03.1–22.2.

C

[¶ 8] In July 2012, the State charged Lamon with one count of endangerment of a child. The State's affidavit of probable cause alleged that Lamon gave birth to John Doe and, immediately following his birth, he tested positive for methamphetamine.

[¶ 9] Lamon moved to dismiss the complaint. She argued the State failed to allege she committed an act of endangerment against her child. The State argued that the child was "exposed" to methamphetamine postpartum, and the mother was criminally liable. The trial court dismissed the complaint, concluding "there [were] no allegations that [Lamon] knowingly or intentionally caused, or permitted her child to be exposed to, to ingest or inhale, or to have contact with a controlled substance, chemical substance, or drug paraphernalia following John Doe's birth."

II

[¶ 10] The State argues the trial court should not have entertained Stegall's motion to dismiss. The State contends Stegall unjustly benefitted from absconding and, under the fugitive-dismissal rule, her motion should have been denied.

[¶ 11] The fugitive-dismissal rule "allows courts to dismiss an appeal of a defendant who escapes during the pendency of his or her appeal." *State v. Bell*, 2000 ND 58, ¶ 4, 608 N.W.2d 232. We are unable to find any case law that suggests this rule should be applied to a defendant who absconds during pre-trial or trial proceedings, and we decline to extend its application.

[¶ 12] A motion to dismiss a criminal information is governed by N.D.R.Crim.P. 12(b). *State v. Perreault*, 2002 ND 14, ¶ 7, 638 N.W.2d 541. The purpose of the motion is to test the sufficiency of the information. *Id.* Under N.D.R.Crim.P. 12(b)(2), a motion to dismiss raising a "defense, objection, or request that the court can determine without a trial of the general issue" may be raised before trial.

[¶ 13] Here, although the trial court issued its scheduling order requesting all motions be submitted by March 16, 2012, and Stegall moved to dismiss the information on August 16, 2012, challenging its sufficiency, we conclude it was within the trial court's discretion to extend its own deadlines before trial.

III

[¶ 14] The dispositive issue before this Court is whether the offense of endangerment of a child, N.D.C.C. § 19–03.1–22.2, applies when a pregnant woman ingests a controlled substance that continues to affect the child postpartum; specifically, the child tests positive for a controlled substance following birth. The offense of endangerment of a child under N.D.C.C. § 19–03.1–22.2(2) states: "a person who knowingly or intentionally causes or permits a child or vulnerable adult to be exposed to, to ingest or inhale, or to have contact with a controlled substance, chemical substance, or drug paraphernalia . . . is guilty of a class C felony." The State conceded in oral argument that none of the Defendants committed any act exposing her child postpartum, but rather argued

the prenatal act of each defendant continued to affect her child postpartum. The State argues that a child is still "exposed" to the controlled substance following birth, even though the initial ingestion by the pregnant woman occurred pre-birth.

 [¶ 15] "The interpretation of a statute is a question of law, fully reviewable on appeal." *State v. Geiser*, 2009 ND 36, ¶ 6, 763 N.W.2d 469. "When interpreting statutes, this Court has a duty to ascertain the Legislature's intent." *Id.* at ¶ 8. "Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained." N.D.C.C. § 1–02–02. "Technical words and phrases and such others as have acquired a peculiar and appropriate meaning in law, or as are defined by statute, must be construed according to such peculiar and appropriate meaning or definition." N.D.C.C. § 1–02–03. If a statute is clear and free from ambiguity, we may not disregard the letter of the law. N.D.C.C. § 1–02–05.

 [¶ 16] Further, we "construe[ ] statutes to avoid absurd or illogical results." *Mertz v. City of Elgin, Grant Cnty.*, 2011 ND 148, ¶ 7, 800 N.W.2d 710; *see* N.D.C.C. § 1–02–38 ("In enacting a statute, it is presumed that: ... [a] just and reasonable result is intended."). Extrinsic aids may be used to interpret a statute to avoid an absurd result, *Mertz*, at ¶ 7, and to determine whether the interpretation is consonant with legislative intent. *Geiser*, at ¶ 9. In *Geiser*, at ¶ 21, we held "N.D.C.C. § 19–03.1–22.2 does not apply to an unborn child." In reaching our decision, we said:

> The legislative history of N.D.C.C. § 19–03.1–22.2 does not indicate that the Legislature intended the statute to apply to unborn children. *Hearing on H.B. 1351*

*Before the House Judiciary Comm.*, 58th N.D. Legis. Sess. (Jan. 22, 2003).
. . . .

This Court has held: "When the plain language of a statute is not 'transparent,' our codified rules of statutory interpretation direct us to look to the Code itself in determining the meaning of statutory terms." *N. X–Ray Co., Inc. v. State ex rel. Hanson*, 542 N.W.2d 733, 735 (N.D.1996) (citing N.D.C.C. § 1–02–02). We review other provisions of the code to assist in the interpretation of N.D.C.C. § 19–03.1–22.2(1)(b).

Section 14–10–01, N.D.C.C., states: "Minors are persons under eighteen years of age. In this code, unless otherwise specified, the term 'child' means 'minor'. Age must be calculated from the first minute of the day on which persons are born to the same minute of the corresponding day completing the period of minority." Geiser asserts N.D.C.C. § 14–10–01, clearly establishes that: " 'child' means a person who is a 'minor', whose existence and age is reckoned from the first minute of the day on which the person is born." The State contends if the Legislature intended "child" and "minor" to mean the same thing, it could have used the word "minor." However, N.D.C.C. § 14–10–01, provides: "In this code, unless otherwise specified, the term 'child' means 'minor.' " Therefore, whether the Legislature used the word "child" or "minor" is irrelevant, because the terms are equivalent. Additionally, the State asserts if the Legislature wanted N.D.C.C. § 14–10–01 to apply to N.D.C.C. § 19–03.1–22.2, it could have provided a cross reference to N.D.C.C. § 14–10–01, or it could have expressly stated so. However, N.D.C.C. § 14–10–01 expressly applies to the entire code unless otherwise specified; therefore, a cross reference to N.D.C.C. § 14–10–01 would be unneces-

sary and redundant. The Legislature has provided that the age of a child is calculated from the day on which the child is born. N.D.C.C. § 14–10–01. An unborn child is not a child or minor according to N.D.C.C. § 14–10–01, and an unborn child is not a child under N.D.C.C. § 19–03.1–22.2(1)(b). *Geiser*, at ¶¶ 10–13.

[¶ 17] Furthermore, we noted that if the legislature had expressly intended to criminalize endangerment of a child to include an unborn child it would have done so. *See Geiser*, at ¶ 17. Chapter 12.1–17.1, N.D.C.C., recognizes that the rights of unborn children are protected from third-party actors, criminalizing murder, manslaughter, negligent homicide, aggravated assault, and assault against an unborn child. *Geiser*, at ¶ 17; *see also* N.D.C.C. §§ 12.1–17.1–02 to 12.1–17.1–06. Under N.D.C.C. ch. 12.1–17.1, the legislature defined unborn child as, " 'the conceived but not yet born offspring of a human being, which, but for the action of the actor would beyond a reasonable doubt have subsequently been born alive.' " *Geiser*, at ¶ 17 (quoting N.D.C.C. § 12.1–17.1–01(3)). Therefore, as stated in *Geiser*, "[t]his makes it clear that when the Legislature wants to cover unborn children, it does so expressly" and, if the legislature "intended N.D.C.C. § 19–03.1–22.2(1)(b) to include unborn children, it could have provided a similar definition of unborn children, as in the previously existing N.D.C.C. ch. 12.1–17.1." *Geiser*, at ¶ 17.

[¶ 18] Chapter 12.1–17.1, N.D.C.C., also expressly excludes criminalizing acts committed on the unborn child by the pregnant woman:

> Charging a pregnant woman for a crime allegedly committed against her unborn child violates the express legislative policy of N.D.C.C. ch. 12.1–17.1. *Our holding that a pregnant woman cannot be charged for a crime allegedly committed against her unborn child under N.D.C.C. § 19–03.1–22.2(1)(b) coincides with ... N.D.C.C. ch. 12.1–17.1.*

*Geiser*, at ¶ 19 (emphasis added).

[¶ 19] The State argues *Geiser* is not applicable because Geiser's unborn child died in utero. Our conclusion and analysis in *Geiser* did not hinge on whether the unborn child was born alive or died in utero. Therefore, we hold that *Geiser* is controlling. Section 19–03.1–22.2, N.D.C.C., endangerment of a child, does not apply to acts committed on an unborn child, regardless if the child is subsequently born alive or dies in utero.

[¶ 20] When a question of interpretation arises as to whether conduct is criminal or not, we construe the statute in the light most favorable to the defendant. *State v. Laib*, 2002 ND 95, ¶ 15, 644 N.W.2d 878. Furthermore, we presume the legislature, having had an opportunity to state otherwise, acquiesces to our construction and interpretation of N.D.C.C. § 19–03.1–22.2. *See Rodenburg v. Fargo–Moorhead Y.M.C.A.*, 2001 ND 139, ¶ 26, 632 N.W.2d 407 ("We presume the legislature is aware of judicial construction of a statute, and from its failure to amend a particular statutory provision, we may presume it acquiesces in that construction."). Therefore, the legislature's failure to amend N.D.C.C. § 19–03.1–22.2 " 'is evidence the court's interpretation is in accordance with the legislative intent.' " *Rodenburg*, at ¶ 26 (quoting *Clarys v. Ford Motor Co.*, 1999 ND 72, ¶ 16, 592 N.W.2d 573).

[¶ 21] Our decision in *Geiser* comports with a majority of jurisdictions. A majority of states have held that a viable fetus is not a child for purposes of criminal prosecution of a mother who ingests a controlled substance during pregnancy. *See Geiser*, 2009 ND 36, 763 N.W.2d 469; *see also Reinesto v. Superior Ct. of Ariz.*, 182 Ariz.

190, 894 P.2d 733 (Ct.App.1995) (holding a mother was not criminally liable for knowingly causing injury to a child under circumstances likely to produce death or serious physical injury after the mother's prebirth ingestion of heroin caused her child to suffer heroin withdrawal symptoms postpartum); *Reyes v. Superior Ct. of San Bernardino Cnty.*, 75 Cal.App.3d 214, 141 Cal.Rptr. 912 (1977) (holding a mother not criminally liable for child endangerment for ingesting heroin while pregnant); *State v. Gethers*, 585 So.2d 1140 (Fla.Ct.App. 1991) (holding child abuse statute clearly did not apply to fetuses and, therefore, did not apply to a mother who ingested cocaine during pregnancy); *State v. Aiwohi*, 109 Hawai'i 115, 123 P.3d 1210 (2005) (holding, for purposes of establishing the offense of reckless manslaughter against a pregnant woman, a fetus is not a person); *Commonwealth v. Welch*, 864 S.W.2d 280 (Ky.1993) (holding a mother's ingestion of a controlled substance while pregnant does not constitute child abuse, as an unborn child is not a person for purposes of criminal prosecution); *Kilmon v. State*, 394 Md. 168, 905 A.2d 306 (Ct.App.2006) (holding a mother may not be held criminally liable under a reckless endangerment statute for the effect that prenatal ingestion of a controlled substance may have on her child, pre- or post-birth); *People v. Hardy*, 188 Mich.App. 305, 469 N.W.2d 50 (1991) (holding a pregnant woman who uses cocaine is not criminally liable for delivery of a controlled substance, despite the possibility the drug may transfer to her infant postpartum via the umbilical cord); *Sheriff, Washoe Cnty. v. Encoe*, 110 Nev. 1317, 885 P.2d 596 (1994) (holding a criminal charge of endangerment of a child does not apply to a pregnant woman who ingests an illegal substance that results in the transmission of drugs to her child through the umbilical cord); *State v. Martinez*, 139 N.M. 741, 137 P.3d 1195 (Ct.App.2006) (holding an unborn viable fetus is not a

"human being" under the New Mexico child abuse statute and the mother's use of cocaine during pregnancy was not child abuse); *State v. Gray*, 62 Ohio St.3d 514, 584 N.E.2d 710 (1992) (holding Ohio's child endangerment statute does not apply to mothers who abuse drugs during pregnancy); *Collins v. State*, 890 S.W.2d 893 (Tex. Ct.App.1994) (holding a fetus is not a child, person, or individual for purposes of criminal prosecution under the reckless injury to a child statute); *State v. Dunn*, 82 Wash.App. 122, 916 P.2d 952 (1996) (holding an unborn child is not a child for purposes of criminal prosecution of mistreatment of a child); *State v. J.Z.*, 228 Wis.2d 468, 596 N.W.2d 490 (1999) (holding reckless injury and attempted first-degree intentional homicide statutes were not applicable to a mother who consumed excessive amounts of alcohol causing injury to her child postpartum).

[¶ 22] Contrary to the majority of states, South Carolina and Alabama have held an unborn child is a child, person, or individual for purposes of criminal prosecution. *See Ex Parte Ankrom*, Nos. 1110176 and 1110219, 2013 WL 135748, at *1 (Ala. Jan. 11, 2013) (holding an unborn child is a child for purposes of prosecuting chemical endangerment of a child); *Whitner v. State*, 328 S.C. 1, 492 S.E.2d 777 (1997), *cert. denied*, 523 U.S. 1145, 118 S.Ct. 1857, 140 L.Ed.2d 1104 (1998) (holding a woman may be prosecuted for child neglect and endangering a child for prenatal substance abuse).

[¶ 23] The facts of some of the above-referenced cases, including *Geiser*, dealt with prenatal conduct and its effect on the unborn child and not the effect of the controlled substance on a child born alive. We conclude there is no distinction between a factual scenario in which the pregnant woman prenatally ingests a controlled substance and the child subsequently dies in utero and the factual scenario in which

the child is born alive for purposes of criminal prosecution of the mother. This conclusion is supported by our decision in *Geiser* in which we held an unborn viable fetus is not a child under the endangerment of a child statute and, therefore, a mother is not criminally liable for endangerment of a child under N.D.C.C. § 19–03.1–22.2 for acts she commits that expose her unborn child to controlled substances. *Geiser,* 2009 ND 36, ¶¶ 10–13, 763 N.W.2d 469.

[¶ 24] Under our statutory interpretation of N.D.C.C. § 19–03.1–22.2 and our holding in *Geiser,* we hold a pregnant woman is not criminally liable for endangerment of a child for prenatal conduct that ultimately harms a child born alive. If we limited the scope of *Geiser* to only unborn children who died in utero, but held a pregnant woman liable if the child ultimately lives and tests positive for a controlled substance postpartum, we would be criminalizing a nonfatal injury while not criminalizing conduct resulting in a fatal injury. Such an interpretation would create an absurd result. It would criminalize conduct that is not a crime at the time the conduct occurs, is not a crime if the unborn child dies in utero, but is a crime only by virtue of its effect on the child born alive.

### IV

[¶ 25] We affirm the trial courts' orders dismissing the criminal complaints.

[¶ 26] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., concur.

DALE V. SANDSTROM, J., concurs in the result.