2007 UT 81

**STATE of Utah, Plaintiff and Appellee,**

v.

**Natalie Marie GALLEGOS, Defendant
and Appellant.**

**State of Utah, Plaintiff and Appellee,**

v.

**Kathy Hall, Defendant and Appellant.**

Nos. 20051129, 20060407.

Supreme Court of Utah.

Oct. 26, 2007.

Mark L. Shurtleff, Att'y Gen., Laura B. Dupaix, Asst. Att'y Gen., Sandi Johnson, Salt Lake City, for plaintiff.

Joan C. Watt, Steven G. Shapiro, Shannon N. Romero, Salt Lake City, for defendants.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 Natalie Gallegos and Kathy Hall petitioned for interlocutory appeal to challenge the magistrate's bindover on charges of child endangerment in each of their cases. Gallegos and Hall each contend that the bindover should be quashed because the State failed to establish probable cause and because the child endangerment statute is void for vagueness. Because their appeals present identical legal issues, we address them together in this single opinion. We reverse the district courts' denials of the motions to quash the bindover orders and remand both cases for further proceedings consistent with this opinion.

## BACKGROUND

### I. NATALIE GALLEGOS

¶ 2 On March 9, 2005, parole officers visited the home of Natalie Gallegos to check the status of parolee Celestino Torres, a co-inhabitant of the home. As the officers approached, they observed Torres, Gallegos, two children, and another adult male on the porch. Before the officers could get close enough to speak with the group, everyone except Torres entered the house. During their initial conversation with Torres, the officers noticed he was acting nervous. Consequently, with Torres' permission, the officers entered and inspected the house.

¶ 3 Gallegos' four children were present in the house at the time of the inspection. A two-year-old was sleeping downstairs on a sofa. Gallegos was in an upstairs bedroom with her six-year-old, four-year-old, and eleven-month-old, who was sleeping in a crib. Upon entering the bedroom, the officers observed a plastic bag inside an open purse

sitting on top of a dresser. The officers testified that they believed the contents to be an illegal drug. The officers arrested Torres. After Gallegos claimed that the purse belonged to her, the officers also arrested Gallegos. Further investigation revealed an additional small plastic bag with two crystal rocks inside a jewelry box in the bedroom. The substances were later tested and confirmed to be cocaine.

## II. KATHY HALL

¶ 4 On December 8, 2003, Salt Lake County Sheriff officers conducted a search of Kathy Hall's home to investigate a lead on a possible methamphetamine lab. When the officers arrived, Hall appeared to be moving out of the residence, and consequently, all the doors in the house were open. Hall's thirteen-year-old daughter was in the living room during the investigation.

¶ 5 One of the officers testified that before entering the house he could smell the odor of a methamphetamine lab from the curb and from the back of the house. In a detached garage officers found black tape, stained rubber gloves, and bottles containing HEET,[1] materials the officers associated with methamphetamine production. In Hall's basement bedroom officers found a glass pipe wrapped in tissue paper on the closet shelf above the hanging rod. In another downstairs bedroom, belonging to Teresa Albretson, police found methamphetamine, a package of pseudoephedrine pills, and packaging materials commonly used in methamphetamine production. The items were found in a set of transparent plastic drawers about three feet high.

## III. PROCEDURAL HISTORY

¶ 6 After hearing the evidence, the magistrate judge in Gallegos' case determined that there was probable cause to bindover on one count of possession with intent to distribute

and three counts of child endangerment for the eleven-month-old, the four-year-old, and the six-year-old. There was no bindover on the charges related to the two-year-old, who was sleeping downstairs.[2] In Hall's case, the magistrate judge found probable cause to bindover on one count of child endangerment and one count of possession of paraphernalia. Gallegos and Hall moved to quash the magistrates' rulings on the endangerment charges, but the district court affirmed the bindovers. Gallegos and Hall petitioned the court of appeals for interlocutory review of the child endangerment charges. The court granted both petitions and the parties briefed the matter for the court of appeals pursuant to that court's precedent in *State v. Nieberger*, 2006 UT App 5, 128 P.3d 1223. The court of appeals then transferred the cases to this court.

¶ 7 We have jurisdiction pursuant to Utah Code section 78–2–2 (2002).

## STANDARD OF REVIEW

■ ¶ 8 We review questions of statutory interpretation for correctness, affording no deference to the district court's legal conclusions. *Stephens v. Bonneville Travel, Inc.*, 935 P.2d 518, 519 (Utah 1997).

## ANALYSIS

¶ 9 The defendants argue that the bindovers should be quashed due to lack of probable cause and because the child endangerment statute is void for vagueness. The child endangerment statute provides, "[A]ny person who knowingly or intentionally causes or permits a child or elder adult to be *exposed to*, to ingest or inhale, or to have contact with a controlled substance, chemical substance, or drug paraphernalia as defined in Subsection (1), is guilty of a felony of the third degree." Utah Code Ann. § 76–5–112.5(2) (2003) (emphasis added).[3]

---

1. HEET is a readily available consumer product used in automobile engines to remove water from the fuel system.

2. This decision was not appealed by the State.

3. The statute applies to children and "elder adults." As these cases concern children, we use

that language. We note that the statute was intended to protect those who could not protect themselves from exposure to harmful substances. Thus the legislature likely intended it to apply to "vulnerable adults" and not "elder adults." *See* Utah Code Ann. § 76–5–111 (2003) (defining "elder adult" and "vulnerable adult"). The plain

¶ 10 The defendants were charged with exposing a child or children to controlled substances, chemical substances, or drug paraphernalia; thus we address only the "exposed to" portion of the statute. The defendants assert that, according to the statute, the evidence must demonstrate a risk of harm to a minor in order to constitute "exposure" under the statute. They also contend that the statute is void for vagueness because the language in the statute fails to provide sufficient guidance as to what constitutes "exposure" to the substances or paraphernalia. They argue that judges, police officers, and prosecutors are left to determine the meaning of exposure, allowing the crime of child endangerment to be prosecuted in an arbitrary and discriminatory fashion.

 ¶ 11 The defendants briefed these cases for review by the court of appeals. Thus their arguments focused extensively on the case of *State v. Nieberger*, 2006 UT App 5, 128 P.3d 1223, which held that exposure under the child endangerment statute did not require the presence of an actual risk of harm. This is our first opportunity to consider this issue, and we review the question of the interpretation of the statute de novo. We conclude that for a child to be "exposed to ... a controlled substance, chemical substance, or drug paraphernalia" under the child endangerment statute, a real, physical risk of harm to the child must exist. In order for the risk to be real, the child must have a reasonable capacity to actually access or get to the substance or paraphernalia or to be subject to its harmful effects, such as by inhalation or touching. Therefore, with respect to the element of risk, to the extent our interpretation conflicts with the court of appeals' holding in *Nieberger*, we overrule it. Further, because our interpretation properly defines and narrows the conduct that constitutes child endangerment, we hold that the statute is not void for vagueness.

 ¶ 12 "Under our rules of statutory construction, we look first to the statute's plain language to determine its meaning." *Sindt v. Ret. Bd.*, 2007 UT 16, ¶ 8, 157 P.3d 797 (internal quotation marks omitted). "We read the plain language of a statute ... as a whole and interpret its provisions in harmony with other provisions in the same statute." *Sill v. Hart*, 2007 UT 45, ¶ 7, 162 P.3d 1099 (internal quotation marks omitted). "We do so because a statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent." *Id.*

¶ 13 *Black's Law Dictionary* defines "expose" as "[t]o show publicly; to display" and "[t]o place in a position where the object spoken of is open to danger, or where it is near or accessible to anything that may affect it detrimentally; as, to 'expose' a child, or to expose oneself or another to a contagious disease or to danger or hazard of any kind." *Black's Law Dictionary* 579 (6th ed.1990). This definition suggests that there must be a showing of a real, physical risk of harm, not simply exposure to the image of a controlled substance, chemical substance, or drug paraphernalia. Placing a child in a situation where she is "open to danger" or she "is near or accessible to anything that may affect [her] detrimentally" necessitates a requirement of accessibility and actual risk of harm.

¶ 14 Moreover, the plain language of the child endangerment statute provides that any person who "causes or permits a child or elder adult to be exposed to, to ingest or inhale, or to have contact with the controlled substance, chemical substance, or drug paraphernalia" is guilty of a felony. The acts of ingesting, inhaling, or contact imply some sort of risk of harm from a controlled substance, chemical substance, or drug paraphernalia because taking such items into the body or having direct contact with them places the individual at risk of harm from substances that the legislature has deemed dangerous.[4]

language, however, clearly applies to "elder adults," creating an odd result.

4. Dangerous substances as defined by the legislature in the child endangerment statute include chemical substances, controlled substances, and drug paraphernalia. Some examples of controlled substances the legislature has deemed dangerous include marijuana, opium and opiates, methamphetamine, codeine, and morphine. Utah Code Ann. § 58–37–4 (Supp.2007).

¶ 15 We agree with defendants' argument that there must be an actual risk of harm to a child in order for conduct to constitute "exposure" under the statute. Because an actual risk of harm is required, exposure must go beyond mere visual or auditory exposure, such as exposure to images of drugs on television or an infant being able to see a controlled substance from the confines of a crib. The child must have a reasonable capacity to access the substance in order for a real risk of harm to exist.[5]

¶ 16 Further bolstering our conclusion is the title of the statute: "Endangerment of child or elder adult." Utah Code Ann. § 76–5–112.5. This title indicates that a real risk of harm is required. The title of a statute is not part of the text of a statute, and absent ambiguity, it is generally not used to determine a statute's intent. *Funk v. State Tax Comm'n*, 839 P.2d 818, 820 (Utah 1992). However, it is persuasive and can "aid in ascertaining [the statute's] correct interpretation and application." *Young v. Barney*, 20 Utah 2d 108, 433 P.2d 846, 847 (1967). In this instance, the title of the statute supports our well-reasoned interpretation that the "exposed to" language in the statute requires actual endangerment to a child. Endangerment, in turn, requires the actual possibility that a child could access the dangerous substance. We note that this seems a common sense interpretation of the statute. If the mere presence, for example, of a controlled substance in the same room or house with children constitutes endangerment, many innocent possessors of legal prescription drugs in secure places in their homes would be committing felonies under the statute. Children are not "exposed to" substances they cannot acquire or be harmed by even though they may be under the same roof with them.

¶ 17 Finally, because we find that the "exposed to" language sufficiently limits the conduct to which the child endangerment

statute applies, we hold that the statute is not void for vagueness.

## CONCLUSION

¶ 18 The "exposed to" language of section 76–5–112.5(2) requires a real, physical risk of harm to a child; the child must have the reasonable capacity to access the substance or paraphernalia or to be subject to its harmful effects, such as by inhalation. Accordingly, we reverse the ruling of the district courts. We decline to undertake the application of the statute as we have now interpreted it to the facts of these cases. Instead, we remand both cases to the district courts to review the bindover orders in light of the standard we have enunciated.

¶ 19 Associate Chief Justice WILKINS, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.

5. In this context, we note that "'access'' necessarily includes some types of exposure that do not require actual touch. For example, a child sleeping in a residence where a methamphetamine lab is functioning, even if the lab is behind locked doors, would be exposed under the terms of the statute because the child will experience harmful effects from the substance. This type of exposure is similar to exposure to a contagious disease as highlighted in the <u>Black's Law Dictionary</u> definition.