BENCH, Senior Judge
(dissenting):
1 28 I disagree With the majority's decision to affirm on the ailterpative ground that Stocks failed to show excusable neglect. - I believe we should address the statute of limitations question on the merits,
1 24 In ruling that Stocks had no meritorious defense, the district court implicitly accepted his excusable neglect argument. © The court suggested that it might have set aside the judgment if it thought that Stocks might be able to successfully defend against another motion for summary judgment by convine-ing the court that the four-year statute of limitations should apply to Asset Acceptance's claims. However, the court ultimately determined that there would be "no point in granting a motion to set aside because a six-year statute is what applies." |
T 25 "A district court has broad discretion to rule on a motion to set aside a default judgment under rule 60(b) of the Utah Rules of Civil Procedure," Menzies v. Galetka, 2006 UT 81, 154, 150 P.3d 480, and I am not convinced, particularly in light of the fact that Stocks was acting pro se, that it was an abuse of the district court's discretion to determine that Stocks had demonstrated excusable neglect. Stocks explained to the district court that he believed his answer to Asset Acceptance's complaint, in which he raised 'the statute of limitations defense, made it unnecessary for him to further respond to Asset Acceptance's motion for summary judgment. Although it might be appropriate to remand the case for the district court to explicitly rule on the excusable ne-gleet issue, I do not believe we are in any position to make such a ruling as a matter of law.
~ 26 II am also not convinced that a more fully developed record is needed to address the question of which statute of limitations applies to credit card debt. Whether an open credit card account, which is presumably subject to terms dictated by a written agreement, but which has a shifting balance tracked in monthly statements,[8] falls under the four-year statute of limitations or under the six-year statute of limitations is a question of statutory interpretation. The four- and include the balance owing on the account, any fees and interest accrued, the interest rate, the current payment due, and the payment due date." Stocks likewise acknowledges that "standard credit agreements are generally kept in a writing of some form that explains the applicable *333 year statute of "limitations is applicable to actions "on an open store account for any goods, wares, or merchandise ... [or].on an open account for work, labor or services rendered, or materials. furnished." Utah Code Ann. § 78B-2-807(1) (LexisNexis 2012). The six-year statute of limitations is applicable to actions brought "upon any contract, obligation, or lability founded upon an instrument in writing." Id. § T8B-2-809(2). The question of which statute of limitations applies to credit card debt does not appear to be particularly fact dependent.[9] I fail to see how a more detailed record would help us to resolve this question of statutory mterpretation.[10] While it might be easier to decide the issue" after it has recived "full analytical attention' at the district court level," and our analysis could certainly "benefit [from] the district court's insight," see stpro T11, this issue of statutory interpretation is ultimately a legal question that we review "for correctness, affording no deference to the district court's legal conclusions," State v. Gallegos, 2007 UT 81, 1 8, 171 P.8d 426.
[27 I believe the parties are entitled to a straightforward answer to the question they have presented on appeal. Because the main opinion fails to answer that question, I respectfully dissent.

. Assét Acceptance indicates that "written terms and conditions setting forth the essential terms" of a credit card agreement "are universally provided to the cardholder ... when the card is.. 'issued" and that "[pleriodic written statements" are also "universally sent to the cardholder ... and include the balance owing on the account, any fees and interest accrued, the interest rate, the current payment due, and the payment due date." - Stocks likewise acknowledges that "standard credit agreements are generally kept in a writing of some form that explains the applicable *333 mterest rates and other important terms" and that although no written instrument had been produced in this case it could be presiimed that he "entered into a standard credit-card agreement ..., which is usually and properly kept in writing."

. The district court's summary decision on the statute of limitations issue supports this conclusion, Had the district court considered this issue . to involve a fact-dependent inquiry, it would have considered the particular facts of the case in reaching its decision rather than simply following the rulings in other district court cases that applied the six-year statute of limitations. Indeed, the district court explained that it con-Sldered the statute of 11m1tat1ons issue to present "a purely legal question."

. The majority suggests that a careful analyms of the specific credit card agreement at issue is necessary to determine which statute of limitations applies. See supra 110. This implies that the majority anticipates the four-year statute of limitations applying to some credit card «debts and the six-year staiute applying to others, depending on the specific terms of the credit card agreement at issue. I fear that such an approach would create unpredictability and confusion regarding the application of the statute of limitations to actions based on credit card agreements. I do not agree that it is necessary to examine the 'particular agreement at issue in order to determine which statute of limitations applies to cred-H.card agreements generally, Rather, an examination of the nature of credit card debt and the form and structure of standard credit card agreements should be sufﬁment See supra 126 & note 8, 20 -