**2022 UT 19**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

CARDIFF WALES, LLC,
*Petitioner*,

*v.*

WASHINGTON COUNTY SCHOOL DISTRICT,
*Respondent*.

No. 20210221
Heard February 7, 2022
Filed May 26, 2022

On Certiorari to the Utah Court of Appeals

Fifth District, Washington County
The Honorable G. Michael Westfall
No. 190500076

Attorneys:

Justin P. Matkin, Robert A. McConnell, Jeffery A. Balls,
Salt Lake City, for petitioner

Russell S. Mitchell, St. George, for respondent

JUSTICE PEARCE authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, JUSTICE PETERSEN, JUDGE BROWN,
and JUDGE HOWELL joined.

Having recused himself, ASSOCIATE CHIEF JUSTICE LEE does not
participate herein; DISTRICT COURT JUDGE JENNIFER A BROWN sat.

Due to his retirement, JUSTICE HIMONAS did not participate
herein; DISTRICT COURT JUDGE ANTHONY L. HOWELL sat.

JUSTICE DIANA HAGEN became a member of the Court on May 18,
2022, after oral argument in the matter and accordingly did not
participate.

JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1 Cardiff Wales, LLC claims that it sold a parcel of land to Washington County School District to avoid an eminent domain lawsuit the School District had threatened to pursue if Cardiff Wales did not agree to the sale. Several years after the sale, the School District decided it did not need the land and sold it to a third party. Cardiff Wales, who did not learn of the resale until after the sale had closed, protested and claimed that the School District had failed to offer it the right of first refusal to repurchase its former property. Utah law requires a government entity to offer property acquired through condemnation or a threat of condemnation to the original owner before disposing of it.

¶2 Cardiff Wales filed suit against the School District arguing that the School District acquired its property under a "threat of condemnation." Utah law provides that a threat of condemnation occurs when "an official body of the state or a subdivision of the state, having the power of eminent domain, has specifically authorized the use of eminent domain to acquire the real property." UTAH CODE § 78-34-20(1)(b) (2007), *replaced by* UTAH CODE § 78B-6-521(1)(a)(ii) (2022). The district court concluded that Cardiff Wales never experienced a threat of condemnation and dismissed the suit for failure to state a claim. Cardiff Wales appealed.

¶3 The court of appeals affirmed, concluding that a government entity does not "specifically authorize" the use of eminent domain until it approves an eminent domain lawsuit in an open meeting. *Cardiff Wales LLC v. Wash. Cnty. Sch. Dist.*, 2021 UT App 21, ¶¶ 12–13, 438 P.3d 1262. We agree with the court of appeals that property is not taken under a threat of eminent domain until a government entity specifically authorizes the taking. But the statute does not support the court of appeals' narrow interpretation of what it means to be specifically authorized. We reverse and remand.

## BACKGROUND

¶4 Cardiff Wales owned a piece of property in Washington City (City) that it wanted to develop.[1] Cardiff Wales began working with

---

[1] This appeal comes to us from a motion to dismiss. "A Rule 12(b)(6) motion to dismiss admits the facts alleged in the complaint but challenges the plaintiff's right to relief based on those facts." *Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 8, 104 P.3d 1226

(continued . . .)

the City to obtain the permits it needed to get its development underway. During this process, the City informed Cardiff Wales that the School District might be interested in constructing a new high school on the property. Cardiff Wales reached out to the School District, which confirmed its desire to purchase the land or take it through condemnation if necessary.

¶5 Cardiff Wales elected to negotiate with the School District. But throughout the negotiation process, the School District reminded Cardiff Wales that if voluntary negotiation was not successful, a condemnation action was "imminent." Cardiff Wales ultimately agreed to sell the property to the School District to avoid losing the parcel through eminent domain.

¶6 As part of the transaction's closing, the School District sent Cardiff Wales a letter. It stated:

> This letter is to serve as written confirmation that earlier this year the Washington County School District informed you that it wished to acquire property from Cardiff Wales, LLC, for the construction of two schools. The District informed you, in accordance with Utah State law, that if agreeable terms could not be reached with Cardiff Wales, LLC for the purchase of the property, the District would be forced to use eminent domain powers to acquire the property. However, over the course of the past several months the parties were able to reach a mutual agreement for the sale of approximately 24.28 acres of property from Cardiff Wales to the District, which transaction closed on the date hereof. We appreciate your cooperation in working with the District to conclude this transaction and avoid the eminent domain process.

¶7 The School District never built a school on the property. Instead, approximately a decade after the School District acquired the property, it sold it to a third party.

¶8 After Cardiff Wales learned that the School District had sold the parcel, the company filed a complaint alleging that the School District had violated its statutory obligation by not first offering to sell the property back to Cardiff Wales. Cardiff Wales directed the

---

(citation omitted). We recite the facts Cardiff Wales presented to the district court but note that these facts have not been proven.

court to the section of the Utah Code that requires a subdivision of the state to grant a right of first refusal to the property's seller if that property was acquired under threat of eminent domain. UTAH CODE § 78-34-20(2) (2007), *replaced by* UTAH CODE § 78B-6-521(1)(a)(ii) (2022).[2] The School District insisted that it had not acquired the property by threatening eminent domain and moved to dismiss the complaint.

¶9 The district court granted the School District's motion to dismiss. The court opined that Cardiff Wales's right to repurchase "hinge[d] . . . largely on the meaning of 'threat of condemnation' under the 2007 version of Utah Code § 78-34-20." And, according to the district court, because there was "no allegation before the court that the School [District] 'specifically authorized the use of eminent domain' to acquire the real property" under Utah Code section 78-34-20(1)(b) (2007), the sale could not have occurred under the threat of condemnation.

¶10 The court further explained that Cardiff Wales had failed to allege that the School District had held "a public meeting with the attendant required public notices, [and] statutory notices to [Cardiff Wales] . . . and there [was] no claim of any vote to specifically approve the filing of an eminent domain action in court." The court concluded that because there had been "no allegation of specific or formal authorization for the use of eminent domain, the right of first refusal claimed by [Cardiff Wales] ha[d] not been triggered." Cardiff Wales appealed.

¶11 The court of appeals read the statute similarly to the district court. It held that a "threat of condemnation" arose only when a government entity has "specifically authorized the use of eminent domain to acquire real property." *Cardiff Wales LLC v. Wash. Cnty. Sch. Dist.*, 2021 UT App 21, ¶ 11, 483 P.3d 1262 (emphasis omitted). The court then concluded that Cardiff Wales "fail[ed] to give due meaning to the requirement that the use of eminent domain be 'specifically authorized.'" *Id.* ¶ 12 (quoting UTAH CODE § 78-34-20(1)). The court of appeals opined that the 2007 version of the

---

[2] When these events occurred, Utah Code section 78-34-20 governed the threat of condemnation and right of refusal. Utah Code section 78-34-20 has since been renumbered as section 78B-6-521. *See* H.R. 78, 57th Leg., Gen. Sess. (Utah 2008). The amendments make no change relevant to our analysis, and we cite the version in effect at the time of the events at issue in the matter.

statute "governed the process to specifically authorize eminent domain's use." *Id.*

¶12 The court next defined "specifically authorized" by drawing from a separate section of the code which provides "that '[p]roperty may not be taken by a political subdivision of the state unless the governing body of the political subdivision approves the taking'" and spells out the steps it must take for the use to be approved. *Id.* (quoting UTAH CODE § 78-34-4(2)(b)) (alteration in original). One of those steps requires the entity's governing body to vote to approve the filing of an eminent domain complaint. *Id.*

¶13 The court of appeals concluded that "to survive the motion to dismiss under the theory that [the School District] acquired the Property by threat of condemnation, Cardiff [Wales] must allege that [the School District] voted and approved the use of its eminent domain power to acquire the Property." *Id.* ¶ 13. Accordingly, the court of appeals held that the district court correctly dismissed the complaint for failure to state a claim upon which relief could be granted because Cardiff Wales never alleged that the School District took a final vote to approve filing an eminent domain action. *Id.*

¶14 Cardiff Wales petitioned for a writ of certiorari.

**STANDARD OF REVIEW**

¶15 The court of appeals affirmed the district court's grant of a motion to dismiss for failure to state a claim. We review the court of appeals' decision for correctness, granting no deference to the decision of the lower court. *Amundsen v. Univ. of Utah*, 2019 UT 49, ¶ 20, 448 P.3d 1224 (citation omitted). "'In so doing, we accept the plaintiff's description of the facts alleged in the complaint to be true' and view all reasonable inferences from those facts in the light most favorable to the plaintiff." *Id.* (citation omitted).

¶16 Cardiff Wales asks us to consider whether the court of appeals erred in its construction and application of Utah Code section 78-34-20 when it concluded that the company did not face a threat of condemnation because it did not allege that the School District had taken a final vote to approve a condemnation action. This question requires us to interpret and apply the relevant statutes. "We review questions of statutory interpretation for correctness, affording no deference to the [lower] court's legal conclusions." *State v. Gallegos*, 2007 UT 81, ¶ 8, 171 P.3d 426.

## ANALYSIS

I. THE COURT OF APPEALS ERRED IN ITS INTERPRETATION
OF THE STATUTORY PHRASE "SPECIFICALLY
AUTHORIZED"

¶17 The court of appeals held that under Utah Code section 78-34-20, a government entity must have "specifically authorized" the use of eminent domain before a "threat of condemnation" can exist. *Cardiff Wales LLC v. Wash. Cnty. Sch. Dist.*, 2021 UT App 21, ¶ 12, 483 P.3d 1262. The court then opined that the government entity specifically authorizes the use of eminent domain when it follows the requirements in Utah Code section 78-34-4 to approve the filing of a condemnation action. *Id.*

¶18 Cardiff Wales asserts that the court of appeals erred in two ways. It first contends that the court of appeals misread Utah Code section 78-34-20 when it defined a "threat of condemnation" as arising only when a government entity has "specifically authorized" the use of eminent domain. Cardiff Wales next argues that even if specific authorization is required, the court of appeals erred when it concluded that specific authorization could only occur by fulfilling all the statutory prerequisites for filing an eminent domain lawsuit.

¶19 Cardiff Wales asserts that the court of appeals misconstrued Utah Code section 78-34-20 when it defined a "threat of condemnation" as occurring only when a government entity with the power of eminent domain "has specifically authorized the use of eminent domain to acquire [] real property." UTAH CODE § 78-34-20(1)(b) (2007), *replaced by* UTAH CODE § 78B-6-521(1)(a)(ii) (2022).

¶20 Utah Code section 78-34-20 states:

> (1) As used in this section, "condemnation or threat of condemnation" means:
>
> (a) acquisition through an eminent domain proceeding; or
>
> (b) an official body of the state or a subdivision of the state, having the power of eminent domain, has specifically authorized the use of eminent domain to acquire the real property.
>
> (2) If the state or one of its subdivisions, at its sole discretion, declares real property that is acquired through condemnation or threat of condemnation to be surplus real property, it may not sell the real property on the open market unless:

(a) the real property has been offered for sale to the original grantor, at the highest offer made to the state or one of its subdivisions with first right of refusal being given to the original grantor . . . .

¶21 The court of appeals interpreted the statute to have "two distinct parts." *Cardiff Wales LLC*, 2021 UT App 21, ¶ 11. The first part defined "acquisition by 'condemnation,'" and the second defined "acquisition by 'threat of condemnation.'" *Id.* (quoting UTAH CODE § 78-34-20(1) (2007)). Thus, it concluded that under the plain language of the statute, "property is acquired under 'threat of condemnation' when 'an official body of the state or a subdivision of the state, having the power of eminent domain, *has specifically authorized the use of eminent domain* to acquire the real property.'" *Id.* (quoting UTAH CODE § 78-34-20(1)).

¶22 Cardiff Wales argues that the court of appeals' reading of the statute eliminates the utility of the word "threat" within the phrase "threat of condemnation." It explains that "[t]he best reading of the statute—one that would preserve the independent meaning of the word 'threat'—would understand 'condemnation'" to mean either "(a) 'acquisition through an eminent domain proceeding' or (b) 'authoriz[ing] the use of eminent domain to acquire the property.'" Whereas "threat of condemnation" means either "(a) the *threat* of 'acquisition through an eminent domain proceeding' or (b) the *threat* of 'authoriz[ing] the use of eminent domain to acquire the property.'" (Quoting UTAH CODE § 78-34-20(1).)

¶23 When we approach a statute, "our primary goal is to evince the true intent and purpose of the Legislature." *State v. Martinez*, 2002 UT 80, ¶ 8, 52 P.3d 1276 (citation omitted) (internal quotation marks omitted). "In doing so, [w]e presume that the legislature used each word advisedly and read each term according to its ordinary and accepted meaning. Additionally, [w]e read the plain language of the statute as a whole [] and interpret its provisions in harmony with other statutes in the same chapter." *Harold Selman, Inc. v. Box Elder Cnty.*, 2011 UT 18, ¶ 18, 251 P.3d 804 (alterations in original) (citations omitted) (internal quotation marks omitted). "We will resort to other methods of statutory interpretation only if we find the [plain] language of the statutes to be ambiguous." *State v. Vigil*, 842 P.2d 843, 845 (Utah 1992), *abrogated on other grounds by State v. Casey*, 2003 UT 55, 82 P.3d 1106. "[W]hen the construction of a section involves technical words and phrases which are defined by statute, the provision must be construed according to such peculiar and

appropriate meaning or definition." *Cannon v. McDonald*, 615 P.2d 1268, 1270 (Utah 1980).

¶24 We agree with the court of appeals' assessment of the structure of subsection (1). *See Cardiff Wales LLC*, 2021 UT App 21, ¶ 11. The subsection's first sentence indicates that it aims to provide definitions for two terms—"condemnation" and "threat of condemnation." UTAH CODE § 78-34-20(1). The Legislature marked "condemnation" and "threat of condemnation" as individual terms by separating them with the word "or." After providing the two terms, the subsection gives two discrete definitions in (1)(a) and (1)(b). Though there are clearer ways to define two terms, reading the statute as a whole suggests that the Legislature intended to give these two separate terms two separate definitions. Thus, subsection (1)(a) defines "condemnation" and subsection (1)(b) defines "threat of condemnation." Because the plain language of the statute supports this conclusion, we conclude, just as the court of appeals concluded, that property is acquired under "threat of condemnation" when "an official body of the state or a subdivision of the state, having the power of eminent domain, has specifically authorized the use of eminent domain to acquire the real property." *Id.* § 78-34-20(1)(b); *see also Cardiff Wales LLC*, 2021 UT App 21, ¶ 11.

¶25 Cardiff Wales also argues that the court of appeals improperly applied the statute when it used the requirements to approve the filing of an eminent domain action listed in Utah Code sections 78-34-4, -4.5 to give meaning to the phrase "specifically authorized" in section 78-34-20.[3]

¶26 Utah Code sections 78-34-4, -4.5 detail the procedure that a government entity must follow before it can file an eminent domain lawsuit. Utah Code section 78-34-4(2)(b) indicates that "[p]roperty may not be taken by a political subdivision of the state unless the governing body of the political subdivision *approves* the taking." (Emphasis added.) Sections 4 and 4.5 then list several things the

---

[3] Cardiff Wales also argues that the phrase "specifically authorized" within the statute is ambiguous and, pointing to our decision in *Marion Energy*, claims all ambiguities must be construed in its favor. *See Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, 267 P.3d 863. Because the statute is unambiguous, we need not comment on Cardiff Wales's reading of *Marion Energy*.

government entity must do to before it can "approve" the condemnation action.[4] *See* UTAH CODE §§ 78-34-4(c), -4.5.

¶27 These requirements include: (1) making a "reasonable effort to negotiate with the property owner for the purchase of the property," *id.* § 78-34-4.5(1); (2) informing the property owner of her rights to mediation and arbitration under Utah Code section 78-34-21, as well as the name and current telephone number of the property rights ombudsman, *id.* § 78-34-4.5(2)(a); (3) providing the property owner with a "written statement explaining that oral representations or promises made during the negotiation process are not binding upon the person seeking to acquire the property by eminent domain," *id.* § 78-34-4.5(2)(b); (4) giving "written notice to each owner of property to be taken of each public meeting of the political subdivision's governing body at which a vote on the proposed taking is expected to occur," *id.* § 78-34-4(2)(c); and (5) taking a final vote, *id.* A government entity cannot grant final approval to file a condemnation action until all five of these prerequisites have been met.

---

[4] Utah Code section 78-34-4(2) states:

(b) Property may not be taken by a [county, city, or town] unless the legislative body of [that] political subdivision approves the taking.

(c) Before taking a final vote to approve the filing of an eminent domain action, the governing body of each political subdivision intending to take property shall provide written notice to each owner of property to be taken of each public meeting of the political subdivision's governing body at which a vote on the proposed taking is expected to occur and allow the property owner the opportunity to be heard on the proposed taking.

(d) The requirement under Subsection (2)(c) to provide notice to a property owner is satisfied by the governing body mailing the written notice to the property owner:

(i) at the owner's address as shown on the records of the county assessor's office; and

(ii) at least ten business days before the public meeting.

¶28 The court of appeals held that "Utah Code section 78-34-4 governed the process to specifically authorize eminent domain's use." *Cardiff Wales LLC*, 2021 UT App 21, ¶ 12 (footnote omitted). According to the court of appeals, property cannot be taken until "specific authorization or approval" is given "by final vote of the governing body, before which the body had to 'provide written notice to each owner of property to be taken of each public meeting . . . at which a vote on the proposed taking is expected to occur.'" *Id.* (alteration in original) (quoting UTAH CODE § 78-34-4(2)(c)). "Accordingly," the court held "it is only after a final vote, and the use of eminent domain powers thereby approved, that eminent domain's use has been 'specifically authorized' as contemplated by section 78-34-20." *Id.* Employing this reasoning, the court concluded that Cardiff Wales had failed to state a claim because the company never argued that the School District took a final vote to approve an eminent domain lawsuit. *Id.* ¶ 13. This was error.

¶29 We start by noting that the Legislature used the term "specifically authorized" in section 78-34-20 and "approve the filing of an eminent domain action" in section 78-34-4. Absent contrary textual clues, we presume that variations in statutory language are meaningful. "Different words used in . . . a similar[ ] statute are assigned different meanings whenever possible." *Bylsma v. R.C. Willey*, 2017 UT 85, ¶ 64 n.115, 416 P.3d 595 (alterations in original) (citing 2A SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 46:6 (7th ed.)). Because we recognize that the Legislature used different words in Utah Code section 78-34-4 than it did in 78-34-20, we presume that the sections refer to different ideas. It would be inappropriate to import the requirements for approving the filing of a lawsuit—contained in section 78-34-4—into section 78-34-20's definition of the threat of condemnation absent some suggestion that the Legislature intended that result.

¶30 In other words, we presume that if the Legislature wanted to condition the right of first refusal on a government entity approving the filing of a lawsuit under 78-34-4, it would have cross-referenced that section, repeated those requirements in 78-34-20, or used the same terminology—approved—in both sections. Since the Legislature did none of those things, we start from the premise that the Legislature used different words for a reason, and we stick with that presumption unless a party can convince us that the Legislature intended the language to function differently.

¶31 Focusing on section 78-34-20's plain language, it appears that by requiring that the government entity "specifically authorize" the

use of eminent domain, the Legislature is signaling that the government's general ability to condemn land is not enough to generate a threat of condemnation. A landowner cannot simply claim she sold her land to the government because of a general fear that the government might have taken it had she not sold. Instead, to meet her statutory burden, a landowner must plead and prove some government action that indicates the government has authorized the use of its eminent domain authority in a way that bespeaks a specific intent to condemn the landowner's property.

¶32 The statute's structure further exposes the infirmities in the court of appeals' interpretation. Before the government entity can approve the filing of an eminent domain lawsuit, it must "make a reasonable effort to negotiate with the property owner." *See* UTAH CODE § 78-34-4.5(1). The entity must also advise the landowner that she has a right to mediation and arbitration. *See id.* § 78-34-4.5(2). Under the court of appeals' reading, a government entity could send a notice to the landowner, negotiate with the landowner as a prelude to filing a lawsuit, and participate in arbitration and/or mediation with the landowner, but still not trigger the statutory right of first refusal because none of these actions would give rise to a threat of eminent domain. It seems highly unlikely that the Legislature intended the right of first refusal to come into play only if the landowner resisted any negotiated resolution during mediation and/or arbitration and waited to sell until after the government entity had taken a vote to approve the filing of a lawsuit. At the very least, there is no suggestion in the statute that this is the way the Legislature anticipated that the process would work.

¶33 The statute's evolution supports our reading of "specifically authorized." In 1983, Utah Code section 78-34-20(1) read, "condemnation, or [] threat of condemnation, . . . as used in this section, means acquisition of real property by a subdivision of the state having the right to exercise the power of eminent domain." That version of the statute provided that whenever a government entity with the general authority to use the eminent domain power obtained land, the previous owner was owed a statutory right of first refusal.

¶34 The Legislature modified this statutory right in the 1996 version so that the right of first refusal arose only in cases where the general threat of the government's eminent domain power had been converted into a particularized threat. That is, in 1996, the Legislature added the "specifically authorized" language.

¶35 In 2006, the Legislature amended Utah Code section 78-34-4.5 to require government entities to negotiate the purchase of a property before taking the land via eminent domain. *See id.* § 78-34-4.5(1). And the amendment added a number of steps the entity must take before it can approve filing an eminent domain complaint. *See id.* §§ 78-34-4, -4.5.

¶36 This history demonstrates that the court of appeals used language that entered the Code in 2006 to define a term the Legislature enacted in a different section of the Code in 1996. Although the Legislature can undoubtedly amend a statute to clarify, refine, or even provide a definition of an already-existing term, there is nothing in the statute to suggest that was the Legislature's intent in this instance. Indeed, there is no reason to believe that the Legislature had the right of first refusal in mind when it added additional hoops for a government entity to jump through before it could use its eminent domain power.

¶37 Simply stated, the court of appeals erred when it concluded that a government entity must approve the filing of an eminent domain complaint before a threat of condemnation exists and triggers the landowner's right of first refusal. The statute requires only what section 78-34-20 says it requires, namely that "an official body of the state or a subdivision of the state . . . has specifically authorized the use of eminent domain to acquire the real property." Without further legislative guidance or definition about what form that authorization must take, a landowner must plead and prove that the entity to which she sold her property had, in some way, specifically authorized the use of eminent domain to take it.[5]

¶38 This means that to survive a motion to dismiss, Cardiff Wales needed to plead that the School District took some sort of action that transformed its general eminent domain power into a specific threat to take Cardiff Wales's parcel by eminent domain. Although Cardiff Wales did not use the words "specifically authorize" in its complaint, it did plead facts that, with the benefit of the inferences

---

[5] To be clear, the court of appeals was correct to assert that one way a landowner could meet this burden would be to plead and prove that the entity had approved filing an eminent domain lawsuit to take the property. The court of appeals erred, however, by concluding that this was the only way an entity could specifically authorize the use of eminent domain.

available to the non-moving party on a motion to dismiss, allow it to meet its pleading burden.

¶39 Cardiff Wales alleged, in its complaint, that the School District told the company it wanted to buy the company's property for a new high school and "intended to acquire the Parcel through condemnation if necessary." Cardiff Wales explained that it ultimately sold the parcel "in order to avoid an eminent domain lawsuit." Cardiff Wales attached to its complaint a copy of a letter it received from the School District that stated the School District "informed [Cardiff Wales], in accordance with Utah State law, that if agreeable terms could not be reached with Cardiff Wales, LLC for the purchase of the property, the [School] District would be forced to use eminent domain powers to acquire the property."

¶40 On a motion to dismiss, the district court must treat "the facts alleged in the complaint to be true and view *all reasonable inferences* from those facts in the light most favorable to the plaintiff." *Amundsen v. Univ. of Utah*, 2019 UT 49, ¶ 20, 448 P.3d 1224 (emphasis added) (citation omitted) (internal quotation marks omitted). While Cardiff Wales did not use the term "specifically authorize" in its complaint, it alleged facts sufficient to give rise to a reasonable inference that the School District had specifically authorized the use of eminent domain to acquire the land if Cardiff Wales did not sell. This means that Cardiff Wales alleged that it sold the property under a threat of eminent domain which gave rise to the right of first refusal. Cardiff Wales met its pleading burden, and the court of appeals erred in affirming the district court's grant of the motion to dismiss.

## CONCLUSION

¶41 The court of appeals correctly held that property is not sold under a "threat of condemnation" unless the government entity specifically authorizes the use of eminent domain. The court of appeals erred, however, when it concluded that a government entity must approve the filing of an eminent domain complaint to specifically authorize the use of condemnation. The court of appeals thus erred in affirming the district court's decision to dismiss Cardiff Wales's complaint. We reverse and remand.

_____